CULPEPPER, Judge.
Under the provisions of LSA-R.S. 48:-•441-48:460, the State of Louisiana, through the Department of Highways, instituted this suit for the expropriation of certain land belonging to the defendant, Willie M. Anding, for the construction of the new four-lane highway designated as State Route Louisiana 1-10. The State deposited $30,419.35, $27,869.35 representing compensation for the land and buildings taken and $2,550 representing severance damages. The defendant answered, seeking an increase to a total of $57,892. The trial judge awarded $32,543.50 for the land and improvements taken and $12,350 for severance damages, making a total award of $44,893.50. The State appealed, seeking a reduction of the award. Defendant answered the appeal, seeking an increase.
The sole issue on appeal is the amount of the award.
The facts show that the defendant owns a 117 acre dairy farm just north of the city of Crowley, Louisiana on blacktopped Louisiana Highway 1111 which runs north and south. The property fronts 841 feet on the east side of the highway and runs back in an easterly direction to a canal. The new four-lane interstate highway will run through this property from east to west. A large traffic interchange is to be constructed at the junction of the new highway with existing Louisiana Highway 1111.
Three parcels, totaling 19.418 acres, of defendant’s land are being taken. Two are in full ownership and one is a servitude of drain. They are described briefly as follows:
(1) Parcel 7-1, containing 14.493 acres, includes defendant’s entire 841 foot frontage on the highway and is to become part of the interchange. On this parcel are located defendant’s residence and dairy buildings which the trial judge valued at $6,052.
(2) Parcel 7-4, containing 4.603 acres, is located in the rear and is agricultural land.
(3) Parcel 7-1-D-l contains only .322 acres and is to be used as the servitude of drain near the interchange.
*447 The trial court’s award of $44,893.50 is itemized as follows:
(1) Buildings and improvements situated on Parcel 7-1.$6,052.00
(2) The 841 foot frontage on Highway No. 1111, to a depth of 150 feet, suitable for homesites and containing 3.24 acres out of Parcel 7-1, valued at $15 per front foot .$12,615.00
(3) The remaining 11.253 acres of Parcel 7-1, useful as “potential subdivision” property, at $1,000 per acre.$11,253.00
(4) Parcel 7-1-D-l, containing .322 acres, also useful as “potential subdivision” property, at $1,000 per acre.$ 322.00
(5) Parcel 7-4, containing 4.603 acres, useful as agricultural land, valued at $500 per acre .$ 2,301.50
(6) Severance damage to 27 acres remaining to the rear of Parcel 7-1, formerly useful for “potential subdivision land” at $1,000 per acre and now useful only for agricultural land, at $500 per acre, resulting in a loss of $500 per acre; but only $300 per acre is allowed because this is all that defendant prayed for.$ 8,100.00
(7) Severance damages to 8.5 acres in the rear which will be left “land locked” by the new no-access highway on the north side and canals on the other two sides, resulting in a total loss of its $500 per acre value.$ 4,250.00
There is very little dispute on appeal as to the value of the buildings. It is also generally agreed that the highest and best use of the property near the blacktopped highway is for residential homesites and the best use of the property in the rear is for agricultural purposes. The principal points of difference are the amount of property on the front which is useful for homesites, the value of this front property, the value of the agricultural property and the severance damages.
The State’s two expert appraisers, Mr. Darrell V. Willet, and Mr. Stanley Tiger, followed essentially similar techniques. Mr. Willet testified that the frontage on Louisiana Highway 1111, to a depth of 990 feet, had a present market value for home-sites at $1500 per acre; that the land in the rear was best suited for agricultural use with a value of $400 per acre; that using these values the land taken had a total value of $21,916, which, together with the improvements valued at $6052, resulted in a total of $27,968 for the property taken. Mr. Tiger testified that the frontage on Louisiana Highway 1111, embracing an area of 20 acres, was best suited for residential subdivision with a value of $1500 per acre; that the property to the rear was best suited for agricultural purposes; and that the total value of the property taken is $21,509.50, which, together with the improvements valued at $6,459, results in a total value of $27,968.50 for the land and improvements taken.
The defendant’s expert appraiser, Mr. Dan A. Richey, Jr., valued the frontage on the blacktopped highway, to a depth of 150 feet, at $17.50 per front foot; and the remainder of Parcel 7-1 as “potential subdivision” at $1,000 per acre. He valued the land in Parcel 7-4 to the rear for agricultural purposes at $700 per acre. Thus, Mr. Richey found the land taken to have a value of about $28,797, which, together with the improvements valued by Richey at $14,328, results in a total value of $43,125 for the property taken.
The trial judge, after considering all of the testimony, and the evidence of comparable sales, was clearly justified in concluding that the frontage on Louisiana Highway 1111, to a depth of 150 feet, had *448 a present market value for homesites at $15 per front foot; and that the remainder of Parcel 7-1 was best suited for “potential subdivision acreage” with a value of $1,000 per acre; that Parcel 7-1-D-l, containing .322 acres was also useful for potential subdivision at $1,000 per acre; that Parcel 7-4 in the rear was best suited for agricultural purposes with a value of $500 per acre; and thus the total value of the property taken, including the improvements, is $32,543.50. This compares with $28,000, in round figures, which the State’s two expert appraisers found to be the value of the land and improvements taken; and about $43,000 which the defendant’s expert appraiser, Mr. Dan A. Richey, Jr., found to be the value of the land and improvements taken, but this is due in large part to Richey’s value of $14,328 for the buildings.
In our view, the most serious issue regards severance damages. As is shown under Item No. 6 of the trial judge’s award, set out above, he concluded that 27 acres, remaining immediately to the rear of Parcel 7-1 (the 14.4 acres fronting on the blacktop) had a value before the taking of $1000 per acre for “potential subdivision land”. The State contends that less than 27 acres was suitable for “potential subdivision”. Mr. Willet said only 990 feet of depth, and Mr. Tiger only 20 acres, could be valued as “potential subdivision land”. Mr. Richey, for the defendant, said the entire 27 acres was “potential subdivision”. We think it was clearly within the discretion of the trial judge to find that the 27 acres in question was best suited for “potential subdivision”. The property is very near Crowley and many homes are already built along the highway.
The trial judge then reasoned that after the taking this 27 acres will no longer be suited for “potential subdivision land” because access thereto will be seriously restricted as a result of the construction of the interchange. The record shows that after the traffic interchange is completed, the only access to this 27 acres will be by a service road, on which the said 27 acres will have a frontage of only about 20 feet. And, as a result of the traffic arrangement of the interchange, this service road itself will be very difficult to reach.
We find no abuse of the trial judge’s discretion in finding that after the talcing the 27 acres in question will no longer have a market value for “potential subdivision land” but, instead, will be useful only as agricultural land. The trial judge allowed a diminution in value of $300 per acre for the 27 acres, a total of $8,100 for this item of severance damages. We think he was correct.
The next item of severance damages allowed by the trial judge was the sum of $4,250 for the 8.5 acres, which will remain south of the new highway and will, with another small tract owned by another party, be “land locked” by the new highway on one side and canals on the other two sides. This property was valued at $500 per acre for agricultural purposes before the taking. The trial judge concluded it will have no value after the talcing because a bridge will have to be built over a canal to obtain access.
However, the facts show that after this expropriation suit was filed, and while the project was under construction, W. R. Aid-rich & Company actually paid the defendant $8,500, or $1000 per acre, for the right to remove dirt from the 8.5 acres. This circumstance raises serious questions as to the allowance of severance damages for this tract.
The defendant argues that his good fortune in being able to sell the dirt from the 8.5 acres to Aldrich, for use in the construction of the project, was a “general benefit”, shared alike by all the property owners in the neighborhood, because Aid-rich could have purchased dirt from any of them. Defendant cites State through the Dept. of Highways v. Hayes, 150 So.2d 667 (3rd Cir.1963), and other authorities for the proposition that an expropriating *449 authority is not entitled to an offset for “general benefits” to all the property in the area, resulting from the new construction, hut is entitled to an offset against severance damages for any “special benefits” to any particular owner.
We think it is error to approach this problem in context of “general benefits” as distinguished from “special benefits”. In our view, the issue at hand must be decided under the provisions of the expropriation statutes controlling this proceeding. LSA-R.S. 48:442(4) provides that, at the time suit is filed, the State must “estimate” the amount of severance damages and deposit that amount with the court. The landowner may withdraw the deposit, LSA-R.S. 48:449. He may also file an answer claiming an increase in the damages to the remainder of his land. LSA-R.S. 48:451. Where he files such an answer, a trial is held and the amount of compensation and damages is determined under the following rules. LSA-R.S. 4S:453 provides:
“The market value is determined as in general expropriation suits but as of the time the estimated compensation was deposited in the registry of the court.

“Damage t • the remainder of the property is determined as of the date of the trial.”

LSA-R.S. 48:456 reads as follows:
“If the compensation finally awarded exceeds the amount so deposited, the court shall enter judgment against the department and in favor of the persons entitled thereto for the amount of the deficiency.
“If the compensation finally awarded is less than the amount so deposited, the court shall enter judgment in favor of the plaintiff and against the proper parties for the amount of the excess.”
A question might arise in a case where the defendant files no answer contesting the amount of the compensation and damages. But here, the defendant did file an answer contesting these amounts and a trial of these issues was held. Under these circumstances the above cited statutes clearly provide that severance damages are determined as of the date of the trial; and the amount deposited for this purpose may be adjusted up or down in the final judgment.
Here the State estimated severance damages to the 8.5 acres at $2,550 and deposited this amount in the registry of the court. But, “as of the date of the trial” it was shown that instead of suffering any severance damages to the 8.5 acres in question, defendant actually received a “windfall” of $8,500 for the dirt removed from this parcel of land originally worth only $4250. It is our conclusion that the trial court judgment must be amended to deduct this item from the amount awarded.
For the reasons assigned, the judgment appealed is amended by deducting therefrom the sum of $4250 allowed as severance damages to the 8.5 acres remaining “land locked” on the south side of the new highway. Pursuant to LSA-R.S. 48:456, judgment is rendered in favor of plaintiff and against defendant for the amount of any excess deposited by plaintiff in the registry of the court and withdrawn by defendant. Otherwise than as herein amended, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Amended and affirmed.