231 So.2d 692 (1970)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
James K. THURMAN et ux.
No. 7852.
Court of Appeal of Louisiana, First Circuit.
February 2, 1970.
Rehearing Denied March 9, 1970.
*693 Johnie E. Branch, Jr., Baton Rouge, for appellant.
John W. Anthony, Bogalusa, for appellees.
Before LOTTINGER, REID and BLANCHE, JJ.
BLANCHE, Judge.
This is an appeal by the State of Louisiana, through the Department of Highways, hereinafter referred to as "the State" from a judgment rendered in favor of James K. Thurman and his wife, Mrs. Mary Kennedy Thurman, hereinafter referred to as "Thurman," in the sum of $4,245, representing compensation for property expropriated by the State together with severance damage to one of the remaining tracts. The record reflects the Thurman tract consisted of five acres measuring approximately 200 feet fronting on the former Louisiana Highway 21 just north of the city limits of Bogalusa, Louisiana, by approximately 1100 to 1200 feet in depth. The property was being used by Thurman as a suburban homesite. The State expropriated .959 acres of the Thurman tract for the right of way for the new Louisiana Highway 21, which in this area runs in a generally north-south direction. The expropriation resulted in the division of the Thurman property with a .7 acre tract lying east of the new highway and a 3.3 acre tract lying west thereof, on which latter tract the Thurman house is located some 600 feet west of the new highway. The State deposited the sum of $1,525 representing the value of the land and improvements expropriated; Thurman answered the suit withdrawing the deposit and claiming additional compensation and severance damages to both remaining tracts. The trial court awarded Thurman $3,000 for the value of the land expropriated, $300 for the replacement of a fence thereon and $945 as severance damage to the .7 acre remaining tract, or a net award to Thurman in the sum of $2,720, with interest as provided by law. The State deposited said amount in the registry of the court on November 7, 1966, and the same was withdrawn by appellees on December 9, 1966. The judgment of the trial court assessed as costs expert witness fees for the two experts used by Thurman at $100 each, with all costs taxed to the State. The State has appealed, seeking a reduction in the award of compensation and a *694 reversal of the award for severance damages, and Thurman has answered the appeal seeking an increase in the awards of compensation, severance damages and expert witness fees.
The State called two expert appraisers: Mr. Edward J. Deano and Mr. Henry B. Breeding, Jr. Mr. Deano appraised the Thurman property at $1,500 per acre and accordingly appraised the .959 acres expropriated at $1,439. He testified he used the market data approach in making his appraisal, and in particular used three sales of what he considered to be comparable property: (1) Bass to Herrington on November 27, 1964, the sale of 14 plus acres with house for $12,500 resulting in an estimated value of the land at $357 per acre, which tract is located about one mile south of the Thurman property; (2) Bruns to Stone on October 26, 1964, the sale of a tract slightly in excess of one-half acre for $2,000, which tract was located a short distance south of the Thurman property and which was part of a larger tract subdivided into lots; (3) Bruns to Perkins on November 17, 1964, the sale of another lot slightly larger than one-half acre also for $2,000, which was located to the rear of the Bruns to Stone tract and which fronted on the new highway. Mr. Deano testified he considered only these three sales to be valid comparables. Mr. Deano testified he adjusted the subject property in accordance with these comparables, consideration being given to the proximity of the Thurman tract to the city limits of Bogalusa, the unfavorable frontage-to-depth ratio, and other factors affecting the property value. He valued the improvements on the expropriated property which consisted only of an old fence at $120. He denied the existence of any severance damage either to the .7 acre remainder or the 3.3 acre remainder for the reason that the highest and best use of the .7 acre remainder and that part of the 3.3 acre tract to the west of the new highway was for homesite or small commercial operations, which resulting increase in property value would more than offset any otherwise existing severance damage. Mr. Breeding testified that he also appraised the Thurman property at $1,500 per acre with a resulting value of the expropriated property of $1,439, which appraisal was likewise made according to the market data approach with utilization of the same three comparables. Mr. Breeding valued the fence at $130. He likewise found no severance damage to either of the two remaining tracts, expressing the opinion that the highest and best use of the remainders fronting the new highway would be commercial.
Thurman likewise called two expert appraisers: Mr. Hoyt Garrick and Mr. James A. Stevenson. Mr. Garrick appraised the expropriated property at $5,000. He likewise testified he used the market data approach but in addition to the latter two comparables used by both experts for the State he resorted to five other sales: (1) Bustin and Bates to Brock on February 29, 1960, the sale of three acres for $7,200 or $2,400 per acre, which property is located 600 feet north of the Thurman tract on the same side of the former Louisiana Highway 21; (2) Bean to Watts Furniture Company, Inc., on September 30, 1965, the sale of 2.247 acres for $12,000; (3) Bean to Mizell on October 18, 1965, the sale of a lot measuring 179 feet by 300 feet for $8,500 located in the vicinity of the Thurman tract; (4) Roche and Adams to Sinopoli on June 28, 1962, the sale of a lot in Old River Estates some three and one-half miles south of the Thurman tract, measuring 162.55 feet by 179.15 feet for $2,750; (5) Roche and Adams to Bertionere on November 19, 1962, the sale of another lot in Old River Estates, measuring 185.4 feet by 200 feet for $2,200. His appraisal of $5,000 for the expropriated tract included the fencing thereon. He testified that the .7 acre remainder was worth $2,100 (the easternmost acre of the Thurman tract being valued separately at $3,000 per acre), which tract he said sustained severance damage in the sum of $1,300. He likewise testified pertaining to severance damages sustained by the larger 3.3 acre remainder.Mr. Stevenson likewise valued *695 the expropriated property with improvements at $5,000, using the same five comparables resorted to by Mr. Garrick together with the latter two comparables used by both experts for the State. Mr. Stevenson testified that the easternmost acre of the Thurman tract considered separately was worth $3,250 with the result that the .7 acre remainder thereof was worth $2,275. He testified this tract sustained 70 per cent severance damage or a diminution in value of $1,365. He likewise testified as to severance damage sustained by the 3.3 acre remainder.
The State contends that the trial court erred in fixing the value of the expropriated property at $3,000 per acre based on an offer to sell to the presiding judge himself and thereby in substituting his opinion for those of the testifying experts. In support of this contention the State cites the following portion of the trial court's Reasons for Judgment:
"This Court may have been influenced by the fact that it is thoroughly familiar with the property and resided within a mile of the property for the past sixty odd years and during his lifetime has probably walked every foot of it one way or the other. At present the Court resides within a quarter of a miles [sic] of the property. In fact the Court's property adjoins that sold by Bean to Mizell.
"The Court has also had a recent experience which is not a part of the record but will be left open if the parties desire to probe into the matter further. About a quarter of mile North of the Thurman property and on the North side of the swamp, the new highway goes through Pearl River Swamp just North to the Thurman property and runs through the swamp for about a quarter of a mile until it reaches a hill on the North side. This property on the hill on the North side adjoining Stephendale was offered indirectly to the Judge of this Court at $3,000.00 an acre but since has been set aside as a location for the industrial school or vocational school we should say, and is not on the market at this time.
"We are satisfied that the land in question is worth approximately $3,000.00 an acre."(Reasons for Judgment, pp. 2, 3)
It is, of course, clear that judicial notice may be taken only of facts which may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence and a court may not take judicial notice of a fact merely within the judge's individual knowledge. As stated in Miranne v. State Farm Mutual Automobile Insurance Company, 54 So.2d 538 (La.App. Orl.Cir.1951):
"Judicial knowledge is limited to what a judge properly may know in his judicial capacity, and he is not authorized to make his individual knowledge of a fact, not generally known, the basis of his action. Courts may properly take judicial notice of the facts that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence." (54 So.2d 538, 540)
Specifically, in State through Department of Highways v. Moresi, 189 So.2d 292 (La.App.3rd Cir.1966), the appellate court in an expropriation case reversed the trial court's disallowance of severance damages in view of the finding by the appellate court that the trial court had based his decision upon his personal opinion as to the effect of the taking upon market value of the remainder rather than upon the preponderance of the expert testimony in the record.
We think the contention of the State in this regard is well-founded, and an examination of the record as well as the Reasons for Judgment convinces us that the trial court not only improperly took judicial notice of certain facts but also *696 substituted his personal opinion with regard to the value of the property taken.
The record clearly shows that the trial court was unimpressed with the expert testimony elicited on behalf of Thurman, and without burdening this opinion with reproduction therefrom of pertinent colloquies, we find the trial court was justified in rejecting the expert testimony of both appraisers who testified on behalf of Thurman with regard to evaluation of the property taken. As held by the Supreme Court in State through Department of Highways v. Barber, 238 La. 587, 115 So. 2d 864 (1959) the rule that a court should consider expert testimony of all experts in determining true value of expropriated property applies only when such expert testimony is well grounded from the standpoint of good reasoning. This court held in State through Department of Highways v. Henry, 192 So.2d 801 (La.App.1st Cir. 1966) that the testimony of each expert in an expropriation proceeding should be given effect if that testimony appears to be well reasoned and sincere; however, if the expert testimony impresses the court unfavorably, it should be disregarded. We are satisfied that the trial court properly refused to accept the testimony of Thurman's two experts with regard to value of the land taken and that he committed no manifest error in so doing.
We are likewise satisfied, however, that the trial court did commit manifest error in refusing to accept the testimony of the State's two appraisers regarding land value. While as previously indicated we feel the trial court was justified in rejecting the expert testimony elicited on behalf of the landowner, we find nothing which likewise justifies the trial court's refusal to accept the expert testimony offered by the State. In State through Department of Highways v. Havard, 239 La. 133, 118 So. 2d 131 (1960) the Supreme Court held that where it appeared that the trial court had rejected the State's expert testimony for unacceptable reasons and that in fact such testimony was reasonable and just, the Supreme Court would substitute an award predicated upon such testimony for the award which the trial court had based on the landowner's expert's excessive estimate. In the case before us, while the award was obviously not based on the expert testimony given on behalf of the landowner, it was, we feel, based primarily, if not totally, upon the trial court's own substituted opinion as to value emanating from his own personal experience as related by him in his Reasons for Judgment.
Both of the State's experts expressed the opinion that the expropriated property was worth $1,500 per acre at the time of the taking with the result that the value of the .959 acres taken was $1,439. Both of these experts likewise testified that they did not feel that the sale from Bustin and Bates to Brock on which Brock subsequent to the acquisition erected a bowling alley was a true comparable inasmuch as this sale was for a particular commercial enterprise, whereas the undisputed highest and best use of the subject property was suburban residential rather than commercial. Rejection of this sale as a comparable by the two experts testifying for the State was justified, cf. State through Department of Highways v. Vallon, 182 So.2d 705 (La.App.4th Cir.1966). We feel from an examination of the record that the two experts who testified on behalf of the State were likewise justified in not using the other sales resorted to by the experts who testified on behalf of Thurman, since these sales were likewise either not true comparables in that they involved subdivided property rather than acreage as in the case of the two sales from Roche and Adams, or they occurred after the expropriation as was the case of the two sales by Bean and are therefore of little help in determining value of the subject property taken. State through Department *697 of Highways v. Dodge, 168 So.2d 430 (La.App.3rd Cir.1964).
We feel that the evaluation placed upon the expropriated property by the State's two experts is well reasoned and sincerely given, and, accordingly, the award of compensation given by the trial court for the.959 acres taken will be reduced to $1,439.
The trial court awarded Thurman $300 for the replacement of the fence located on the property taken, which award was predicated on the express reasoning that "as a practical matter the Court is fully satisfied that it costs just as much to build a new fence as it does to repair an old one and put it back in the shape that it was in before it was destroyed." (Reasons for Judgment, p. 4) In State through Department of Highways v. Matise, 170 So.2d 709 (La.App.1st Cir.1964), this Court held that where the only evidence as to the value of a dilapidated barbed wire fence in an expropriation proceeding was that it was worth $221, the landowners were entitled to recover only $221 for the taking of the fence and not $750, which was the cost of a new fence; with the further holding that in the event the taking of the fence rendered the remaining property unusable the cost of replacing the fence would amount to an item of severance damage. In the Matise case, the evidence reflected and we so held that an award as an item of severance damage for the cost of replacing the fence was justified inasmuch as the remaining property was used as a strawberry farm and therefore required construction of a fence on the remaining property. The record in the case before us, however, fails to indicate any necessity for the construction of a fence on the remaining property, and the landowners, having failed to carry the burden of proving such item of severance damage as required by R.S. 48:453 and related jurisprudence, are relegated to recovering only the value of the fence destroyed in the expropriation. In this regard the record contains only the expert testimony of Mr. Deano and Mr. Breeding, who respectively evaluated the fence at $120 and $130; an award of $130 to the landowners will be made for the value of this expropriated improvement.
As previously mentioned the taking resulted in the division of the Thurman property into a .7 acre tract and a 3.3 acre tract. The trial court refused to grant the landowners any severance damage to the 3.3 acres but did award severance damage in the sum of $945 to the .7 acre tract. It is important to note in this regard that when Mr. Deano attempted to testify concerning the lack of severance damage to the 7 acre tract because of its enhancement in value resulting from the frontage on the new highway, he was interrupted and the following colloquy occurred:
"Q Did you take into consideration any possible severance damages to the remaining parcels of land?
"A Yes sir, I considered that the property being split in two pieces by offsetting the division of the property, it is creating more road frontage to the property and in my opinion would increase the value of that rear land after the taking than the value that it was before the taking.
BY THE COURT: But we don't give any consideration for the values after the taking, what was it worth when you took it?
Judge, what I was saying it was worth $1500 an acre at the time of the taking. By virtue of the taking
BY THE COURT: You cut off that .7 of an acre on the East side.
That is right, you cut if off but it has a highway frontage that can still be used.

*698 BY THE COURT: But you don't give any value to the road, the improvements, you don't consider it at all. In other words, you can't run Thurman's property up because you have got a highway for that East portion there. You can't run it up or increase its value to give the State credit for the evaluation. You just take as it was when you took it.
BY MR. BRANCH: Well Judge, as I understand it, the land value, the part taken is determined as of the date that the suit is filed but possible severance damages to remainders are as of the date of the trial and I think what Mr. Deano is saying there is that the special benefits that have arisen as a result of the highway being built across there, has enhanced the value of the property.
"That is correct. It would offset any possible damage because of the property being separated. If there was any severance damage, the creation of the new road would offset it.
"Q The .7 of an acre is situated on the East side of that new highway, what possible use could you find for such a small piece in that location?
"A .7 of an acre is adequate in size for a homesite or a small commercial operation." (Trans., pp. 7, 8)
It is clear that severance damage is determined as of the date of the trial rather than as of the date of the taking. R.S. 48:453; State through Department of Highways v. Baddock, 170 So.2d 5 (La. App.1st Cir.1964), writ refused, 247 La. 349, 351, 170 So.2d 867; State through Department of Highways v. Mouledous, 199 So.2d 185 (La.App.3rd Cir.1967), writ refused, 250 La. 934, 199 So.2d 927; State through Department of Highways v. Babineaux, 189 So.2d 450 (La.App.3rd Cir. 1966); State through Department of Highways v. Anding, 189 So.2d 445 (La. App.3rd Cir.1966). Moreover, as stated by the Supreme Court in Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654, 661 (1941) and quoted approvingly in State through Department of Highways v. Central Realty Investment Company, 238 La. 965, 117 So.2d 261, 266 (1960):
"If, as a result of constructing new work, the remaining land or part of it is left fronting on a road or street, and the land fronting the road or street is more desirable and more valuable because of the frontage, the advantage thus gained is a special or peculiar benefit, and damage to the remaining property may be offset by such benefits."
Both Mr. Deano and Mr. Breeding testified that the .7 acre remainder suffered no severance damage and that the value thereof had been enhanced as a result of the frontage enjoyed by this remainder on the new highway, which opinion seems well founded on the face of the record, especially when considering the proximity of this property to the city limits of Bogalusa.
The burden is, of course, on the landowner to prove severance damage, R.S. 48:453, and as stated in State through Department of Highways v. Central Realty Investment Company, 238 La. 965, 117 So. 2d 261, 265 (1960), quoting approvingly from Louisiana Highway Commission v. Ferguson, 176 La. 642, 146 So. 319, 320 (1933):
"Damages to land * * * cannot be presumed, and unless the owner shows by competent evidence that the value of his remaining land has been diminished by the taking, compensation will be limited *699 to the value of the land actually taken."
We are of the opinion that the evidence fails to preponderate in favor of Thurman's claim of severance damage to the .7 acre tract and that the trial court erred in making an award therefor.
The foregoing discussion likewise disposes of appellees' request in their answer to the appeal for an increase in the award of compensation for the expropriated property. With regard to appellees' request for severance damage to the 3.3 acre remaining tract, we feel from a review of the record that the trial court was manifestly correct in refusing to award severance damages thereto and that Thurman likewise failed to prove the existence thereof to this remainder.
Appellees also complain that the trial court erred in assessing the expert witness fees for the landowners' two appraisers at $100 each and that said expert witness fees should have been assessed at $225 each. While it is clear that a landowner in an expropriation case is entitled to recover for his expert appraisers a reasonable fee covering both preparation for trial and time spent in testifying at the trial itself, in this case the trial court made the express finding that the preparatory work was not performed by the experts but was instead performed by appellees' counsel:
"We next come to the fees of the experts. Mr. Garrick and Mr. Stevenson in particular. The Court will say to begin with that up until this time it has had great faith in all of the experts used by both the State and by the land owner. This faith has been shaken to some extent on the trial of this case because the Court is satisfied that the attorneys for the highway department or other employees of the Highway Department did all of the investigative work as to comparables and that the attorney for the land owner did all the research for the land owner's witnesses. The Court is willing to allow expert fees of $100.00 to Mr. Stevenson and $100.00 to Mr. Garrick for testifying in Court. The other work was done for them and they used their knowledge and appreciation of value to evaluate the same." (Reasons for Judgment, p. 4)
The trial court, of course, was in the better position to make such a determination and finding in view of his having heard the witnesses and observed their demeanor. Considering the circumstances, we find no manifest error committed by the trial court in his assessment or expert witness fees.
For the foregoing reasons the judgment of the trial court is amended by reducing the award to appellees from $4,245 to $1,569 and by awarding appellees the sum of $44.00 as additional compensation in excess of the amount of $1,525 originally deposited by the State. Judgment is also rendered in favor of the State ordering appellees to return the excess amount withdrawn from the State's deposit of November 7, 1966, with legal interest thereon from date of withdrawal. State through Department of Highways v. Armstrong, 193 So.2d 538 (La.App.4th Cir. 1966), writ refused, 250 La. 367, 195 So.2d 643. All costs of these proceedings are assessed to the State.
Amended, affirmed and rendered.