WATKINS, Judge.
This is an appeal taken by the State Department of Highways from the awarding to defendant, Roland J. Robert Distributor, Inc. of $57,280.00, less a credit of $7,897.00 previously deposited in the court, for property value and severance damages in the expropriation of a portion of a certain tract of land which the defendant corporation owned and on which it operated a service station, tire and automobile parts distributorship and automobile repair service department. Also located on the tract of land was a building used as a warehouse, on each end of which building were two retail rental units. The Department of Highways contends on appeal that the portion of the award attributable to property value was excessive, and that no severance damages should have been awarded. We affirm.
The order of expropriation was dated March 9, 1976. The trial on the amount to be awarded was conducted December 21, 1979. Although the cases were not consolidated, by stipulation of counsel the testimony taken in four other expropriation cases[1] involving property near the site of the property presently involved was to be considered for purposes of formulating a judgment as to value.
The service station and related facilities are located on the northwest corner of the intersection of Louisiana Highway 44 and Louisiana Highway 30 in Ascension Parish. The property taken in the present case was a strip of property fifteen feet in width along Louisiana Highway No. 44, containing 2,287.50 square feet. The strip of property is the easternmost fifteen feet of the defendant’s tract of land at this site. The parent tract of land owned by the defendant and affected by this expropriation is slightly irregular in shape, but it approximates a 200 foot by 200 foot square excluding a roughly equilateral triangle of land of about 90 feet on each side of the triangle which filled in the northwest corner of the said intersection. At the point of intersection Highway 44 runs north and south from Gonzales to the Burnside industrial complex and Highway 30 runs east and west from Baton Rouge to the Airline Highway. Gonzales lies a short distance to the north on Highway 44.
*1176 Although the defendant’s property lies on the corner, bordering the property to the north and west is the property of Eastbank, Inc., which owns and operates a large shopping center thereon. Directly to the east across Highway 44 from defendant’s property is the property on which Daigle Pontiac conducts its business. A bank and a considerable number of retail outlets are also situated on Highway 44.
The property of defendant on Highway 44 along with property belonging to others was expropriated to effect the widening and improvement of that highway. The intersection of Highways 44 and 30 was controlled by a traffic signal both before and after widening. However, a median was to be placed on Highway 44 on the north and south approaches to the intersection which had not been in place before.
At the time of expropriation defendant’s place of business had one island for gasoline pumps, located on the Highway 30 access drives to the service station. Although wiring and plumbing had been installed to permit the building of another service island parallel to Highway 44, the gasoline pumps for that island had not been installed at the time of the taking.
Defendant called one expert appraiser, Kermit W. Williams. The Department of Highways called two expert appraiser, L.J. Roy and Oren W. Russell. The three appraisers arrived at their valuation of the property by the comparable sales method. Williams estimated the expropriated property to have a value of $5.00 per square foot, or the portion taken to be worth $11,-437.00 for the land and $1,508.00 for the improvements taken, for a total value of $12,945.00. He testified that on the remaining property defendant had sustained severance damages of $44,335.00 as a result of the taking, determined by the reduction of the value of the remaining land from $5.00 to $4.00 per square foot, and a reduction of 10% of the utility of the buildings and improvements on the remaining land. Roy, on the other hand, testified that the expropriated property was worth $2.50 a square foot at the time of taking, or $5,719.00. Improvements were valued by Roy at $2,288.00. He thus arrived at a total valuation of the property expropriated at $8,007.00. Russell estimated the value of the property taken to be $2.31 a square foot, or $5,284.00. Improvements were valued by Russell at $2,709.00. He thus arrived at a total valuation of $7,993.00. Neither Roy nor Russell found that any severance damages had been sustained.
The trial court found in written reasons for judgment that Williams’ appraisal was the most reasonable. The reasons for judgment specifically mention (1) the fact the corner in question was the prime corner in the area, (2) the fact that the corner in question had the greatest traffic flow in the area, and (3) the fact that the largest shopping center in the Gonzales area stood on the north and west sides of the defendant’s property. A trial court award in an expropriation case will not be upset when it bases its award upon a reasonable and sound analysis of expert testimony. State through Department of Highways v. Havard, 239 La. 133, 118 So.2d 131 (1966); State through Department of Highways v. Thurman, 231 So.2d 692 (La.App. 1st Cir. 1970).
Defendant’s expert and the state’s experts used, or were aware of, generally the same comparable sales. All the sales were made for a price substantially less than the $5.00 per square foot used by Williams in making his appraisal. However, some of the comparable sales were old, and the locations of the comparable property were not nearly so favorable. As noted by the trial court, he relied in making his award primarily upon the extremely favorable and, therefore, valuable location of the property expropriated. No other locations were nearly so favorable, and some of the sales were much more remote in time. The basic disagreement between the appraisers for the state and the defendant results from their use of different sales in arriving at the most appropriate percentage of increase in value to be applied to the subject property to reflect most accurately its value at the time of the taking. We *1177 cannot say that the reasons for the selection of the various comparables given by each appraiser are unreasonable or unworthy of consideration. While it is true, as the state argues, that Mr. Russell’s conclusion as to percentage of increase in value was based on a consideration of a much larger number of land sales in the area than was that of Mr. Williams, we believe that his method included numerous parcels of land that were not truly comparable to the subject property. Mr. Williams, on the other hand, limited his consideration to a much smaller number of sales, but in being more selective was able to use sales of more nearly comparable parcels of land in determining what he considered to be the most appropriate percentage of increase. The state’s appraisers’ percentage adjustment of 4% to 5% per annum increase in value as a projection in adjusting older sales to 1976 market value does not appear to be as realistic as the l!/2% per month compounded monthly percentage testified to by Mr. Williams, the appraiser for defendant, in light of the prevailing economic conditions. The 4% to 5% price level adjustment is substantially less than the increase taking place nationally and regionally and does not, therefore, seem nearly as accurate a measurement of the increase as does the lV2% figure, particularly in view of the strong evidence of the rapid and sharp economic growth of the Gonzales area which we find in the record. Although the trial court did not comment in its reasons for judgment on all of the factors relied upon by the three expert witnesses in arriving at their estimate of value, we have no doubt that the court below was influenced by the foregoing factors in view of its conclusion that the factors relied upon by Mr. Williams, defendant’s appraiser, most relevantly influenced market value and severance damages. The trier of fact is authorized and has the right to determine the weight to be given to the testimony of each expert witness, and his finding will not be overturned in the absence of manifest error. State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (La.1972). We find no error in the trial court’s determination of the value of the property taken.
Severance damages are the damages to the remainder of a tract of land resulting from a partial taking, and are ordinarily calculated as the difference between the market value of the remaining property immediately before and immediately after the taking. State, Dept. of Hwys. v. Denham Springs Dev. Co., Inc., 307 So.2d 304 (La.1975). The trial court awarded defendant the sum of $44,335.00 as severance damages to its remaining property stating that the formerly unrestricted access to the property from La. 44 will be restricted “due to the construction of a median barrier on La. 44.” The trial court further stated that “because of the reduction in size of the subject tract and its layout, particularly with reference to the pump island, ingress and egress from the service station area will be rendered much more difficult.” Both of the state’s appraisers testified that the taking resulted in no damages to the remainder of defendant’s property. These two appraisers, using the market data method, were of the opinion that after the taking the highest and best use of the remainder was still commercial retail as it was before, and that the utility of the remaining land and its improvements had not been diminished by the taking of the expropriated parcel. They testified that the construction of the median barrier on La. 44 would not have the effect of impairing access to the subject tract to any greater extent than before, and that there remained sufficient land area to utilize the pump island area on La. 44 and to conduct the same volume of business that defendant enjoyed prior to the taking. Mr. Williams, defendant’s appraiser, testified that damages to the remaining property were sustained in the amount of $44,335.00. Also using the market data approach, he agreed with the state’s appraisers that the remainder retained its highest and best use as commercial retail after the taking, but was of the opinion that the utility of the buildings and improvements on the remainder had been diminished in value by approximately 10%, and that the value of the re *1178 mainder of the defendant’s tract of land had been reduced by the taking to the extent of 20%. Mr. Williams testified that the erection of a median barrier would definitely restrict the flow of traffic into and out of the business from La. 44. The median is what is described as a painted striped left turn control median and apparently will be neither raised nor depressed, and is in effect a middle lane to be used by southbound vehicles on La. 44 intending to turn left at the intersection with La. 30. In his initial estimate, Mr. Williams was under the impression that the median was going to be raised and therefore a barrier to any vehicles seeking to make a left turn from La. 44 into the subject property and seeking to make a left turn on La. 44 when exiting the subject property. In his testimony at trial, however, after he learned that the median was to be only striped he was still of the opinion that this type of traffic control would inhibit ingress and egress from the property along La. 44. While both parties concede that the law does not prohibit vehicles from crossing such a median, it is difficult to deny that the practical effect of the median is to discourage the flow of traffic into and out of the subject property. As the nature of defendant’s business operations on this property is particularly dependent on traffic flow and ease of access to and from the property, we cannot find manifest error in the trial court’s conclusion that the construction of the median on La. 44 has restricted the access the property enjoyed before the taking resulting in damages to defendant.
The record further shows, in regard to severance damages, that on the La. 44 side of defendant’s property, there was approximately twenty-five parking spaces for vehicles left for servicing, repairs, tires and accessories. Some ten of these parking spaces will be lost as a result of the expropriation. The loss of so substantial a number of customer parking spaces will clearly diminish the ability of defendant to accommodate as large a number of its customers’ cars as before, and will thus reduce the amount of business that defendant is able to conduct on the remaining property, hence reducing its value. Furthermore, as a result of the taking it will not be feasible to complete and use the projected service island along La. 44 because of the reduction of space attendant upon the taking, and the defendant has been deprived of the full potential of the future growth of its business operations. We, therefore, find no error in the trial court’s award of severance damages.
We note that the judgment of the trial court appears to fix attorney’s fees for defendant at 25% of the entire amount of the award. Under the provisions of LSA-R.S. 48:453(E) the award of attorney’s fees is to be fixed in a reasonable amount not to exceed 25% of the amount by which the award exceeds the amount deposited in the registry of the court. The trial court in the exercise of its discretion fixed attorney’s fees at 25%. The judgment of the trial court should have spelled out that attorney’s fees of 25% were to be computed upon the difference between the amount deposited and the amount of its award for market value and severance damages. To the extent it failed so to limit attorney’s fees by specific language, it erred.
The total award for property value and severance damages was $57,280.00. The amount deposited was $7,897.00. Hence the amount of attorney’s fees should be 25% of the difference between these two sums, or 25% of $49,383.00. The judgment of the trial court is hereby amended accordingly.
We affirm the judgment of the trial court, as amended, all costs to be paid by appellant.
AMENDED AND AFFIRMED.

. State through DOTD v. First National Bank of Gonzales, No. 25,277, State through DOTD v. LeBlanc, No. 24,528, State through DOTD v. Cannon, No. 22,973, and State through DOTD v. Daigle, No. 25,278, Twenty-Third Judicial District Court, Parish of Ascension.