LOTTINGER, Judge.
This is a suit for expropriation under the authority of Section 19.1 of Article 6 of the Louisiana Constitution, LSA, and Sections 441 through 460 of Title 48 of the LSA-Revised Statutes of 1950. Proceeding under the constitution and Revised Statutes, the Louisiana Department of Highways, the petitioner herein, deposited with the Court the sum of $141,061.00 as compensation for the taking in full ownership, subject to a mineral reservation in favor of *759 the defendants. The defendants responded seeking an additional amount of $98,939.00 for the expropriation. The Lower Court awarded judgment in the sum of $64,897.00 in addition to the amount deposited by petitioner in the Lower Court, plus legal interest ■on the excess over the deposit, from which judgment petitioners have taken this appeal seeking a reduction and the defendants have answered the appeal seeking an increase in the amount awarded.
This suit was consolidated for purposes of trial below with another suit by the same plaintiff against Welsh Funeral Home, Inc. No appeal has been taken in said companion suit.
The record discloses that the property sought to be expropriated is situated in the City of Baton Rouge. Said property consists of two contiguous lots, with improvements thereon. One of the lots is classified as commercial property having a frontage of 123.56 feet on Government Street by a depth of 200 feet, less a small parcel measuring nineteen feet by twenty-four feet in the southeast corner thereof. This commercial lot comprises 24,256 square feet, and contains the main building of what was known as Welsh Funeral Home. The second lot of ground is classified as residential, and has a frontage of 118.81 feet on Europe Street by a depth of 303 feet. This lot has a width along its rear or northern line of 99.56 feet. This parcel contains 32,067 square feet and there are various improvements of small valuation located thereon.
The Lower Court rendered judgment holding the valuation of the improvements to be in the sum of $137,294.00. These improvements were itemized as follows :
Two story frame building $ 65,433.00
Brick masonry addition $ 56,350.00
Garage $ 2,244.00
Wash house $ 300.00
Concrete aprons and retaining walls $ 1,850.00
Canopy $ 750.00
Architect’s fee $ 10,367.00
TOTAL $137,294.00
In addition to the above, the Lower Court valued the commercial lot at the sum of $49,424.00 and valued the residential lot at the sum of $19,240.00, thus making a total valuation of $205,958.00 for the property taken from the defendants.
The petitioner appealed contending:
1. That the fair market value of the improvements taken should have been fixed at either $92,000.00 or $72,000.00, and
2. That the sum of $5,500.00 allowed for preparatory work of experts introduced by defendant is excessive and should be reduced.
The defendants answered the appeal contending:
1. That the fair market value of the improvements taken should have been fixed at either $161,000.00 or $158,011.00, which figures were the estimates of the two experts testifying on behalf of defendants, and
2. That severance damages of $5,898.-00 should have been awarded as damages to the residential property remaining, and
3. That the amounts awarded the experts below were commensurate with the work and skill involved and was correct.
The quantum awarded by the Lower Court for the taking of the real estate, less the improvements, is not questioned upon this appeal, the only question insofar as real estate is concerned is as to the severance damages to the remaining property. The amount awarded below for the improvements taken is seriously contested, as is the amount awarded for the experts, particularly with respect to the preparatory work prior to trial. In addition, the defendants claim to be entitled to damages for landscaping as well as the value of draperies and carpets.
*760 The evidence discloses that the improvements taken consist of a funeral home together with the accessory buildings. The funeral home itself was an impressive, two story, white frame building of colonial architecture. It had large rooms with high ceilings. At one time it was a private residence. There was a newer white brick masonry building constructed approximately in 1950 to the west of the main building, which was architecturally designed so as to blend in with the older two story structure adjoining it on the east. These two buildings, which composed the funeral home, were well set back on the commercially zoned property so as to take up just about the entire lot. To the rear and on the residential property were a large garage building, a wash house, and further in the rear, were four old colored cabins. On the commercial property, in the front of the funeral home, were two large oak trees, symmetrically placed one on either side of the main sidewalk. The elevation of the property was some three or four feet higher than Government Street, upon which it faced. The valuation with regard to the real estate, and which is not in dispute at the present time, was based upon comparable sales in the vicinity.
With regard to the valuation placed on the improvements, the experts were unable to use comparables. The defendant engaged the services of Mr. Charles E. Beadles, an experienced general contractor, who testified with regard to the cost of replacement of the improvements on the property, based on readily available and regularly approved materials and workmanship. His estimate was in the sum of $183,155.00. The defendants also offered the testimony of Eugene Barksdale, another experienced general contractor, as to the cost of reproduction of the improvements, using the same materials and the same workmanship as were used in the original construction. Naturally, because of the passage of time since the construction of this old, colonial type building, the cost of reproduction based on today’s costs would be much greater than would be the cost of replacement. Mr. Barksdale’s estimate was in the sum of $372,736.00. None of the parties have seriously considered basing the damages herein on this latter amount, and they have agreed that the estimate of Mr. Beadles is realistic.
There were four experts testifying as to the various valuations of damages in this suit. Mr. Leroy Cobb and Mr. J. Clifford Doiron testified on behalf of the petitioner, while Mr. L. Hidel Brown and Mr. Verdie Reese Perkins testified on behalf of the defendants. The testimony of these various experts was quite lengthy, and it would serve no useful purpose to go into detail regarding their testimony at the present time.
The Lower Court accepted most of the testimony of Mr. Brown as to the valuation of the improvements. A close reading of the record discloses that Mr. Brown’s testimony was thorough and well reason,ed. Although we realize that all of these witnesses were well qualified, Mr. Brown apparently made the better impression upon the Lower Court, and we find no error in accepting his valuations. As stated before, by common consent, the estimate of Mr. Beadles as to cost of replacement of the improvements was accepted. His estimate is itemized as follows:
Two story frame building $ 98,150.00
Brick masonry addition $ 64,350.00
Garagé $ 4,488.00
Wash house $ 600.00
Concrete aprons and retaining walls $ 3,700.00
Canopy $ 1,500.00
6% architect’s fee $ 10,367.00
TOTAL $183,155.00
Mr. Brown testified that he depreciated the garage, wash house, concrete aprons and retaining walls, and canopy, at fifty percent each. He depreciated the brick masonry building, which was constructed approximately nine years prior to the date of the taking, at $8,000.00, which is approximately one and one-quarter percent per year. The Lower Court accepted these depreciation *761 figures as reasonable and based its judgment thereon.
We feel, however, that the Lower Court erred in reaching a depreciation figure on the two story frame building. Mr. Brown testified that an expenditure of $10,-000.00 for repairs would put this building in “as good as new” condition. To be safe, Mr. Brown doubled this amount, and allowed a round figure of $20,000.00 for depreciation on the two story building, which was slightly more than twenty (20%) per cent of the replacement cost. The Lower Court did not accept this figure, and in reaching its decision stated that one of the state’s experts testified that in his opinion a depreciation of thirty-seven and one-half per cent is proper. The expert to whom the Court referred was Mr. Cobb, none of whose valuations were used by the Lower Court. The Court then used a depreciation of thirty-three and one-half per cent for the two story frame building which figure was not reached by any of the experts, but was just an arbitrary percentage decided upon by the Lower Court. To be consistent and in line with sound reasoning, we feel that the depreciation as set forth by Mr. Brown, at a round figure of $20,000.00 would be proper. The figure as set forth by Mr. Cobb, at thirty-seven and one-half per cent, was too arbitrary in that it applied as to all the improvements. On the other hand Mr. Brown used sound reasoning in assessing various depreciation on the various improvements. The differential there would be an increase in award in the sum of $12,717.00.
With regard to the claims for severance damages and for the two oak trees, landscaping, carpets and drapes, we agree with the Lower Court that the defendants have failed to prove these items with sufficient certainty and for said reason same will not be allowed.
With regard to the award of the Lower Court as to the ■ preparatory work of the experts presented by defendants, we are unable to find an abuse of discretion.
For the reasons hereinabove assigned, the judgment of the Lower Court will be amended so as to increase the award by the sum of $12,717.00 with regard to damages for taking of the two story frame building. All costs of this appeal shall be paid by petitioner.
Judgment amended and affirmed.