219 So.2d 837 (1969)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
WILLIAM T. BURTON INDUSTRIES, INC., Defendant-Appellee.
No. 2563.
Court of Appeal of Louisiana, Third Circuit.
February 26, 1969.
Rehearing Denied March 26, 1969.
*839 D. Ross Banister, Glenn S. Darsey, Marshall W. Wroten, Johnie E. Branch, Jr., by Johnie E. Branch, Jr., Baton Rouge, for plaintiff-appellant.
Camp, Carmouche, Palmer, Carwile & Barsh, by Edward M. Carmouche and Jules E. Guglielmo, Lake Charles, for defendant-appellee.
Before TATE, FRUGE, and MILLER, Judges.
TATE, Judge.
The plaintiff highway department expropriated approximately 101 acres from a 275-acre tract owned by the defendant ("Burton"). The District Court awarded $114,000 for the land taken, plus $40,500 for the severance damages sustained by the remainder (less, of course, the amount deposited by the plaintiff Department at the time of the initial taking).
Issues of Appeal
The Department appeals, contending that excessive amounts were allowed (a) for the land taken, (b) for severance damages, and (c) for expert witness fees. By answer *840 to the appeal, the landowner requests that the amounts allowed for these items be increased.
The most significant question presented by this appeal is with regard to severance damages: The Department contends that, because of special benefits resulting to the remainder of the tract, no severance damages were caused by the highway taking. The trial court allowed full severance damages, because it found that the remainder did not receive any special benefits by reason of the taking.
The Department took the land for construction of a segment of Interstate Highway 10, a controlled-access route running east-west across the Southern part of the United States. The taking included an area for the construction of an interchange, allowing controlled access at this point (Chloe) to this major throughway.
In determining whether the 175-acre remainder suffered any net depreciation in value by reason of the taking, three principal issues presented are:
(1) If this remainder appreciated in value because of the highway construction, then, under the facts of this case, is this appreciation a special benefit available as an offset against severance damages?;
(2) May the Department offset against severance damages all increases in the value of this remaining acreage between the taking and the subsequent trial some years later, whether resulting from the highway construction or from other causes?; and
(3) What, in fact, were the amounts of severance damages and special benefits received by the subject tract, if any?
Severance Damages
The present was a "quick-taking" expropriation. LSA-R.S. 48:441-60. The initial taking was by petition filed in 1960, with a supplemental taking in 1961. The trial of the landowner's demand for an increase in the compensation did not take place until 1967, seven years later.
Under "quick-taking" expropriations such as this, the market value of the land taken is determined as of the time of the taking, but the "damage" to the remainder is determined as of the date of the trial. LSA-R.S. 48:453. The defendant landowner has the burden of proving his claim for such severance damages. Id.
Essentially, the severance damage sustained by a remainder is the difference in its market value caused by the taking. State Through Dept. of Highways v. Central Realty Investment Co., 238 La. 965, 117 So.2d 761; State Through Dept. of Highways v. Waterbury, La.App. 3d Cir., 171 So.2d 790. General benefits received by all property in the neighborhood may not be used to reduce severance damages, but the latter may be offset by special benefits resulting, as of the date of the trial, from the construction of the improvement for which the land was taken. LSA-R.S. 48:453; State Through Dept. of Highways v. Mouledous, La.App.3d Cir., 200 So.2d 384; State Through Dept. of Highways v. Waterbury, La.App.3d Cir., 171 So.2d 790.
The trial court allowed $40,500 severance damages for the loss in market value of the 175-acre remainder of the tract left after the taking. The Department, conceding that some severance damages was sustained through a loss of access caused by the taking, contends that nevertheless the trial court erred by failing to offset against these severance damages the special benefits this remainder of the tract received from now being adjacent to the interchange access to Interstate Highway 10 for which the taking was made.
Special and General Benefits
In Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654 (1941), our Supreme Court authoritatively set forth the controlling principles and rationale dispositive of the issue before us. In pertinent summary, and in distinguishing general *841 and special benefits, our Supreme Court stated, 2 So.2d 660:
"When part of a tract of land is taken for the public use, it frequently happens that the construction and maintenance of the public work for which the land is taken inflicts some injury upon the remainder of the tract or parcel. And, while this is true, yet in other respects the remaining land may be benefited by the construction of the work. The benefits or advantages, if any, which may result from the construction of the work are either general or special. General benefits are those which are shared alike by all property owners in the neighborhood or community. Such damage as a property owner may sustain as a result of the construction and use of a public work cannot be offset by these general benefits. The reason is that the citizen whose property is taken cannot be compelled to bear more of the cost of the public improvement and general benefits resulting therefrom than is borne by other property owners whose property is neither taken nor damaged for the public purpose. In the case at bar, if the Highway Commission were allowed to offset defendant's damage by the general benefits, the result necessarily would be that she would contribute more to bring about the general benefits than her neighbors would. In Louisiana Highway Commission v. Hoell, 174 La. 302, 140 So. 485, it was held that damages to the remaining land cannot be offset by general benefits.
"The rule is different as to peculiar or special benefits or those affecting a particular estate by reason of its direct relationship to the improvement. If, as a result of constructing a new work, the remaining land or part of it is left fronting on a road or street, and the land fronting the road or street is more desirable and more valuable because of the frontage, the advantage thus gained is a special or peculiar benefit, and damages to the remaining property may be offset by such benefits. * * *"
Thus, if as a result of widening or improving the street, the remainder of the tract left fronting on it is more valuable because of this frontage, the increased value due to such particular location is a special benefit and may be offset against severance damages otherwise allowable to the landowner. State Through Dept. of Highways v. Central Realty Investment Co., 238 La. 965, 117 So.2d 761. It is a special benefit even if the property of all other property owners with frontage along the route is similarly increased in value. State Through Dept. of Highways v. Miller, La. App.3d Cir., 182 So.2d 155.
On the other hand, where the improvement for which the taking is made produces a general appreciation in the value of the property in the area irrespective of its peculiar location adjacent to the improvement in question, this is a general benefit attributable to all land in the vicinity. For the reasons above summarized by Grey, this general benefit cannot then be used to reduce the severance damages sustained by the landowners fronting on the improvement. Louisiana Highway Commission v. Hoell, 174 La. 302, 104 So. 485; State Through Dept. of Highways v. Martin, La.App.3d Cir., 219 So.2d 548 (Docket No. 2561, rendered February 14, 1969); East Baton Rouge Parish Council v. Koller, La.App.1st Cir., 94 So.2d 505.
As stated at 3 Nichols on Eminent Domain, Section 8.6203 (Rev. ed., 1965): "The most satisfactory distinction between general and special benefits is that general benefits are those which arise from the fulfillment of the public object which justified the taking, and special benefits are those which arise from the particular relationship of the land in question to the public improvement."
The landowner has the burden of proving that severance damages were sustained, LSA-R.S. 48:453. However, the condemning authority has the burden to prove that the remainder received special benefits available as an offset against severance *842 damages otherwise allowable to the landowner. City of New Orleans v. Giraud, 238 La. 278, 115 So.2d 349; State Through Dept. of Highways v. Marks, La.App.4th Cir., 188 So.2d 653.
Valuation of Severance Damages as of Trial
The Department also contends that severance damages should not have been allowed because the landowner's appraisers did not value the remainder as of the date of the 1967 trial. These experts estimated the damage to this remainder caused by the 1960-61 taking as of its date. In determining the market value of the tract at the 1967 trial, they did not take into consideration any increase in the value of the acreage produced by the general improvement in economic conditions between the time of the initial taking and of the trial seven years later.
In suggesting that this method of appraisement was erroneous, the Department relies on the provisions of LSA-R.S. 48:453 that: "* * * Damage to the remainder of the property is determined as of the date of the trial. * * *"
The "quick-taking" statute, LSA-R.S. 48:441-60, does indeed provide that, when part of a tract is taken, severance damages should be determined as of the date of the trial, 48:453, which the statutory scheme contemplated as being after the highway project was completed and accepted by the Department, 48:451.
In our view, however, the provision that severance damages be valued as of the date of the trial was statutorily intended to specify that the damages the remainder suffers should be reduced by special benefits which result to it from the completion of the highway construction[1], not to deprive the landowner of compensation for damages sustained by his tract because of any general increase in the value of land between the taking and the trial. We do not believe that the legislature intended to deprive a landowner of damages to his property undoubtedly caused him by the taking, simply becausein the long interval between the taking itself and the subsequent completion of the long-term major highway construction projecthis property had increased in value due to generally improved economic conditions, along with all lands in the area (and, probably, most other lands in the entire State).
The landowners' damages should not be offset by such a general appreciation in value, any more than it is by general benefits the tract receives because of the improvement. As stated by the Grey decision, cited above, "* * * the citizen whose property is taken cannot be compelled to bear more of the cost of the public improvement and general benefits resulting therefrom than is borne by other property owners whose property is neither taken nor damaged for the public purpose." 2 So.2d 660.
Did the Improvement Result in Special Benefits to this Tract?
Having determined that these general principles are applicable, the remaining issues as to severance damages-special benefits are factual.
The record indicates that all property within the general neighborhood of Interstate-interchange is generally appreciated in value. Because of the interchange, the land is made more accessible to urban centers by the quick-transit possible via the Interstate Highway system, and thus has a greater long-range potential than prior to the construction.
*843 However, all property within a reasonable distance of the interchange so appreciates, whether or not fronting on the highway improvement or on the highway itself. Insofar as the present subject appreciated for such reason (along with all other property in the area), the trial court properly held such increase in value to be a general benefit which should not be taken into consideration to reduce the severance damages sustained by the tract. Such an increase in value did not result from the subject land's particular location or its peculiar relationship with regard to the improvement so as to be a special benefit. It was rather a general benefit, being to all lands in the general neighborhood regardless of whether they fronted upon or were situated with particular location relative to the interchange of the Interstate highway.
The remainder from this particular taking, however, forms the interchange circle's southeast quadrant bounding upon the southeast approach ramp onto the Interstate from a north-south state highway. It is situated some four miles from the city of Lake Charles.
The Department contends that, because of this particular location in relation to the interchange, the subject tract sustained special benefits, due to its particular commercial attractiveness adjacent to this interchange. It is admitted, however, that no sale of land has been made at this interchange since its completion in 1964.
The Department's appraisers estimate of special benefits was based upon some fifteen to twenty sales of land made after other interchanges were constructed elsewhere along Interstate 10. All of these sales showed a marked appreciation in the value of the land sold. One sale was for a motel, one for a nightclub next to the Texas border (disregarded as a comparable), and all the rest were for construction of service station facilities.
On the other hand, the landowner's appraisers analyzed each of the sales relied upon by the Department, as well as examined for all transactions along each of the 31 interchanges between the Texas border and Lafayette (this being the Louisiana portion of Interstate 10 completed by the trial.) At a good half of the interchanges they found no evidence of commercial activity, an estimate agreed with by one of the Department's appraisers. Additionally, they found that none of the sales relied upon concerned land at all comparable to the present remaining acreage.
We find no error in the trial court accepting the latter testimony as more persuasive and as preponderating.
The general effect of this accepted testimony is that any special benefits by reason of possible commercial exploitation of land near an interchange (the reason the Department's experts felt there were special benefits here) depends upon a combination of factors which may vary with the interchange or, in fact, with the quadrants of a particular interchange. These include: the volume of traffic, both from the Interstate and from the cross-highway; the position of the remainder with regard to being the most available for motorists leaving the expressway; the visibility of the property to expressway motorists before they reach the exit ramp; readiness of access to and from the expressway and the entrance ramp; the location of the interchange with regard to population centers; and competing sites available at the same or nearby interchanges.
In most of these aspects, the subject property was deficient, as compared with the properties relied upon by the Department as comparable. For instance, on 29 of the 31 interchanges the properties were on grade with the entrance ramps. The present quadrant, however, is 8 feet below the level of the cross-highway and ramp, which were elevated in order to enter the Interstate (which itself at the place is elevated *844 at least 12 feet above the level of the land). The present quadrant is thus difficult of access.
Again, the present north-south cross highway had very little volume of traffic compared to those at the interchanges involved in the Department's comparables. This state highway proceeds north across a bayou and peters out in farming country a few miles later. Likewise, due to heavy wooded areas nearby, as well as to the present quadrant being left in a hole by the elevation of the Interstate and of the entrance ramps, the visibility factor is negative.
For all of these reasons, the evidence indicates that commercial development will more likely take place at interchanges with more favorable attributes, and that the present quadrant-remainder has received no appreciation in value because of its location near the present interchange. Because of its unfavorable characteristics, this quadrant's potential for commercial exploitation was small and only speculative and did not enhance the market value of this tract as of the date of the trial.
The Awards Made
The trial court valued the 101 acres of land taken at $114,000. It found the remainder had sustained severance damages of $40,500, based upon a comparison of before-and-after values. The State attacks these awards as excessive, the landowner as insufficient.
As to the value of the land taken, the State's only complaint is that the trial court, in accepting the valuation of one appraiser (Terry), overlooked that it should have adjusted slightly downward its per-acre valuation in accordance with the court's 3% downward adjustment of this appraiser's valuation of the entire parent tract before the taking. Without wishing to involve this opinion in the niceties of mathematical calculation, we simply state that we find no error in the trial court's finding of $114,000 as the overall value of the land taken.
There were slightly different measurements of the extent of the land taken (from 100 to 101 acres) and of the extent of the parent tract (from 275 to 282 acres), which could justify either a higher per-acre valuation than the Department argues for or an additional acre's compensation.
In expropriation proceedings, the trial court's factual determinations as to value of property and severance damages, and his evaluation of and the weight given to the testimony of expert witnesses, should not be disturbed on review in the absence of manifest error. State Through Dept. of Highways v. Tolmas, 238 La. 1, 113 So.2d 288; Orleans Parish School Board v. Paternostro, 236 La. 223, 107 So.2d 451; State Through Dept. of Highways v. Potter, La.App. 1st Cir., 204 So.2d 308. For this reason, we reject the Department's contentions that the trial court's award for the land taken should be adjusted downward, as well as the landowner's suggestions of error that the trial court erred in rejecting higher estimates of valuation made by this party's experts.
As to severance damages, the preponderance of evidence by both the Department's and the landowner's experts proves that the portions of the remainder available for residential subdivision suffered a loss in market value because of the restriction of access caused by the highway improvement.
On the entire west side, the now-elevated (8') cross-highway and ramp deprives this land of its former frontage on the north-south state highway. Across the entire north of the property, the elevated (12') Interstate forms a barrier to access to the former water-frontage influence of English Bayou and to nearby wooded areas.
The Department's experts opined that the loss of access is the only damage caused by the taking. They valued this causing damages of between $13,000 and $16,000 (the cost of constructing a side-road parallel to the cross-highway). On the other hand, because of the loss also of waterfront and wooded-area influence, as well as *845 because of the unsightliness of the location in a "hole" surrounded by the raised roadways, the landowner's experts felt that the market value of the remainder had been damaged more greatly, some $87,000 or more. They did not feel the construction of the side-road would restore the access to the property formerly enjoyed by it.
We find no manifest error in the trial court's award of $40,500 severance damages, in effect adjusting the various estimates of the experts as to damage in accordance with the court's own evaluation of the relative weight to be given to the testimony of each and to the various factors relied upon in the opinion of these experts.
Both parties contend that the trier of fact is not authorized to determine the severance damages in an amount to which no expert testified, by rejecting the precise amounts to which each expert had testified. We disagree. The trial court's power to do so is a necessary correlative of the fact-trier's right to evaluate the weight to be given to each witness' testimony, as well as of its right to make factual determinations as to which of the factors relied upon by the witnesses relevantly influence market value and severance damage. The trial court is not required to accept or to reject the testimony of each witness in toto.
Expert Witness Fees
The remaining issues have to do with witness fees.
In expropriation proceedings, the condemning authority is taxed with the reasonable costs of the testifying expert witnesses retained by the landowner to help him obtain his just compensation. State Through Dept. of Highways v. Babineaux, La.App. 3d Cir., 189 So.2d 450 and many decisions therein cited. Fees to be paid such expert appraisers are based not only upon their apearance in court, but also upon the preparatory work done by them. State Through Dept. of Highways v. Babineaux, cited above.
The trial court allowed the two appraisers testifying for the plaintiff a fee of $200 each as their witness fee, together with some $7000 for Mr. Moses Abelman and $3,200 for Mr. Normand Terry, primarily for the extensive preparatory work done by them.
The Department attacks these fees as excessive. We are unable to agree. Detailed statements submitted and the extensive preparatory work reflected by their testimony indicate a substantial basis for such. For instance, Mr. Albelman worked a total of 327 hours and Terry a total of 123 hours.
The substantial issue of this litigation concerns whether any special benefits accrued to the landowner by reason of the construction of the interstate exchange. This necessitated a study of the 31 interchanges along Interstate Highway 10 between the Texas border and Lafayette. While the Department may have had such data in its files due to its extensive expertise, it was necessary for the landowner to conduct an expensive and individual investigation in order to enable him to receive the just compensation to which constitutionally entitled. Additionally, by amended and supplemental pleadings, the Department shifted its position at least twice, causing the necessity of reappraisals.
We are unable to find that the trial court abused its discretion in fixing these expert fees. Columbia Gulf Transmission Co. v. Fontenot, La.App. 3d Cir., 187 So.2d 455; State Through Dept. of Highways v. Welsh, La.App. 1st Cir., 147 So.2d 758.
The trial court fixed appraiser Terry's fee in accordance with his statement, which included the sum of $750 for five days spent in court from November 2nd to the 22nd. Exhibit B-12, Tr. 242. The trial court also allowed an additional $200 fee to this witness for his court appearance on the day he testified. The Department contends that this latter item is a duplication and should be disallowed. However, it appears that the first item was for Mr. Terry's presence at the first *846 five days of the trial in an advisory capacity, in connection with the evaluation and cross-examination of the Department's experts by the attorneys within the fields of the appraiser's competency. On the other hand, the additional $200 fee was apparently fixed in connection with his testifying on December 14th, the last day of the trial. We find no duplication.
By answer to the appeal, the landowner requests the allowance of an expert witness fee for its surveyor witness, Mr. Elmer Shutts, who testified and who also did extensive preparatory work with regard to surveying the entire property, determining the quantities of land taken and affected, determining drainage flow and elevations, etc.
Although the Department suggests that no fee was allowed because this witness' testimony did not provide determinative evidence, we disagree. Mr. Shutts' testimony and findings regarding acreage, physical characteristics of the land, drainage disturbance or not, were relevant and of value in determining the issues of this litigation.
No effort was made at the trial to introduce proof as to the value of his services; it seems apparent to us that only because of this oversight did the trial court fail to fix the expert fee due this witness for his court appearance and preparatory work connected therewith. These witness fees may, however, be taxed by rule incidental and subsequent to the original proceedings. LSA-C.C.P. Art. 1920. We reserve the right of the landowner defendant to have Mr. Shutts' expert witness fees taxed in accordance with this code provision.
Decree
Finding no error, we affirm the judgment of the District Court.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J. and CULPEPPER, J., are of the opinion a rehearing should be granted.
NOTES
[1] The more common practice is for the landowner to file suit for his severance damages before completion of these longterm highway construction projects. In this event, the determination of special benefits to be received by the remainder several years later involves more speculative factors. State Through Dept. of Highways v. Black, La.App. 3d Cir., 207 So.2d 583, 589.