PRICE, Judge.
This is an expropriation proceeding arising out of the construction of Interstate Highway No. 20 through Madison Parish, Louisiana. The State of Louisiana, through the Department of Highways, expropriated 115.69 acres out of a tract containing a total of 1,600 acres belonging to James B. McPherson, Jr., situated 15 miles east of Tallulah.
The sum of $47,485.00 was deposited by the Department of Highways as just compensation for the property taken. Defendant answered the action, contesting the amount awarded as just compensation for the land taken, and claiming severance and special damages to the remaining acreage owned by him.
After a trial on the merits, resulting in a judgment of the trial court increasing the award for just compensation to the total sum of $87,704.45, the Department of Highways filed a motion for a devolutive appeal. The return date was originally fixed on May 9, 1970 and extended by order of court on application of the Clerk of Court to June 20, 1970. The record was filed by the Clerk of Court for Madison Parish with this court on June 19, 1970. A motion to dismiss the appeal was filed in this court by defendant, contending the appellant failed to properly perfect its appeal by paying to the clerk of court the cost of the stenographer for preparation of the transcript of testimony at least three days prior to the return date as required by Article 2126 of the Louisiana Code of Civil Procedure. The State of Louisiana is exempt from payment of all costs other than the stenographer’s costs for preparing the transcript of testimony.
Defendant contends this omission by appellant to pay timely the stenographer’s costs constitutes grounds for mandatory dismissal of the appeal under the case of Raymond v. Columbia Casualty Co., 179 So.2d 654 (La.App.4th Cir. 1965), and also constitutes an abandonment of the appeal under the case of Murry v. Southern Pulpwood Insurance Co., 133 So.2d 827 (La.App.3d Cir. 1961); Thompson v. Madden, 106 So.2d 784 (La.App.2d Cir. 1958), and Williams v. Weems, 222 So.2d 523 (La.App.2d Cir. 1969).
We find no merit in the motion to dismiss. The Raymond case cited supra, relied on by defendant, can be distinguished as the record therein was never filed with the appellate court because of a failure of the appellant to pay the costs required with the clerk of court. This exonerated the clerk from any imputation of fault in not lodging the appeal as required by Article 2127 of the Louisiana Code of Civil Procedure.
The cases cited by defendant in support of the abandonment theory are distinguishable from this case as they all involved a failure by the appellant to pay the filing fee of the appellate court rather than costs due the clerk of the trial court. The jurisprudence is uniform that the failure to pay this required fee timely constitutes an abandonment and is grounds for mandatory dismissal of the appeal. However, we do not consider the payment of the stenographer’s fee to have this same effect. Article 2126 directs two categories of costs to be paid three days prior to the return date: (1) Costs of preparing the record on appeal; (2) The filing fee required by the appellate court.
Under the jurisprudence the second category must be paid timely under the penalty of mandatory dismissal, regardless of whether the record has been lodged by the clerk in the appellate court.
The effect of a failure to pay the costs due the clerk of court timely under the provisions of Article 2127 is to exonerate the clerk of the duty to file the record with the appellate court prior to the return date, thus imputing any delay in filing the record on the appellant and exposing him to the penalty of dismissal. Article 2127 reads as follows:
“The clerk of the trial court shall have the duty of preparing the record on ap *546 peal. He shall cause it to be lodged with the appellate court on or before the return day or any extension thereof, upon the timely payment to him by the appellant of all fees due in connection with the appeal, including the filing fee required by the appellate court to lodge the appeal. Failure of the clerk to prepare and lodge the record on appeal either timely or correctly shall not prejudice the appeal.” (Emphasis supplied.)
This interpretation seems logical in view of the comments under Article 2126, which read as follows:
“The new statute adopted to implement the above article accords with the latter, and specifies what fees the clerk of the trial court shall charge the appellant. See revised R.S. 13:4445 and 13:4446. Both this statute and the above article are intended to overrule legislatively the unfortunate and unworkable rule of Osborne v. Mossier Acceptance Corporation, supra, by: (1) making it the mandatory duty of the appellant to pay these fees to the clerk of the trial court; and (2) requiring such payment to be made not later than three days before the return day, or extended return day. If the appellant fails to pay such fees timely, any delay in lodging the record of appeal in the appellate court is imputable to the appellant.” (Emphasis supplied.)
In the case at bar the clerk did file the transcript prior to the return date and appellant is exempt from payment of the filing fee of the appellate court.
The Supreme Court in the case of Frue-hauf Trailer Co. v. Baillio, 252 La. 181, 210 So.2d 312 (1968), has pointed out that if the clerk timely lodges the record despite a nonpayment of the fees, then the applicability of the provisions of the article have become moot as the appeal has been perfected by the filing of the record. This is precisely what occurred in the case presently before us, and thus resolves the motion to dismiss.
For the foregoing reasons the motion to dismiss is overruled.
The petition for expropriation in this action was filed in June, 1968, and the case was tried on the merits in July, 1969, prior to the completion of the construction. The issues to be resolved on this appeal concern value of the land taken and severance damages.
The tract owned by defendant consisted of approximately 1,600 acres of cleared land used for the growing of cotton and soybeans. The plans for the project show the route of the highway traverses defendant’s land from east to west through the southerly portion of the tract, leaving a large remainder of approximately 1,372 acres on the north and a smaller remainder of about 111.19 acres on the south of the limited access highway. An interchange is proposed on the west end of defendant’s property to be known as the Waverly Interchange, which provides access to Louisiana State Route 577.
Defendant seeks to have the value of the land taken calculated on the basis of $500.-00 per acre, and claims severance damages to the two remaining tracts in the amount of $30,700.00. He further asks $18,237.95 for costs of restoring the drainage system and building additional field roads made necessary by the destruction of existing roads, and $12,500.00 for the cost of construction of a bridge to gain access to the south remainder.
On the trial of the merits the defendant offered the testimony of two expert, appraisers, William B. Williams of Lake Providence and Malcolm Sevier of Tallu-lah, who each testified as to his opinion of the market value of the entire tract prior to the taking and the damages ensuing to the remainder as a result thereof. Williams estimated the tract had a value of $455.00 per acre prior to the taking. He found its highest and best use was for agricultural purposes, for which it is now being used.
*547 Sevier also found the land was being put to its highest and best use as presently used, but concluded the market value to be $500.00 per acre.
Williams determined that the north remainder did not sustain any severance damages, whereas the south remainder of 111.19 acres was damaged to the extent of $255.00 per acre by its severance from the parent tract. Sevier was of the opinion the north remainder (1,372 acre tract) had sustained damages to the drainage and field road systems amounting to $7,511.25, and concluded the south remainder sustained severance damages of $200.00 per acre.
Defendant offered the testimony of a drainage, highway and bridge contractor, to prove the costs of restoring the drainage and field roads, and of constructing the bridge. The sum of $7,511.25 was shown to be the cost of restoring roads and drainage on the north remainder, and the estimated cost of a bridge was $12,380.00.
The Department of Highways offered the testimony of W. Dean Carter and R. M. Gochenour, both real estate appraisers residing in Monroe. They appraised the market value of the entire tract before the taking at $410.00 and $400.00, respectively. These witnesses were of the opinion that any damages the remainder may have suffered by severance would more than be offset by the increase in value of a portion of defendant’s land abutting three of the quadrants of the interchange. The plaintiff also contends that because of the construction of the highway, the defendant has received a special benefit consisting of the sale of dirt from 48.5 acres of his land abutting the right-of-way for a sum double the per acre value of the land, and that this amount in excess of its true market value should be offset against any severance damage which might be found.
The trial judge, in his written reasons for judgment, accepted the opinion of the higher of the defendant’s two appraisals— by Mr. Sevier — and found the per acre value of the land taken to be $500.00, for a total of $57,845.00. He also accepted Mr. Sevier’s estimate of severance damages totaling $7,511.25 to the north remainder, and $22,348.20 to the south remainder.
The claim for the cost of building a bridge was rejected. The total award by the trial court amounted to $87,704.45, subject to a credit of $47,485.00 previously deposited by the State.
Plaintiff, the Department of Highways, has assigned as error on this appeal the finding of the trial judge that the land of defendant had a value of $500.00 per acre prior to the taking; the allowance of any severance damages; the refusal of the trial court to consider the amount received for dirt sold over and above the market value of the land to be a special benefit and an offset against any severance damages. found.
The defendant has answered the appeal, seeking an increase in the total award to the sum of $115,740.70, asserting that the rejection by the trial court of the cost of the construction of a bridge across a canal to gain access to the south remainder and of certain items requested for construction of drainage and field roads was error.
We shall first discuss the issue of just compensation for the land taken. In an expropriation proceeding the burden is on the defendant who contests the adequacy of the estimate of just compensation to prove that the land taken had a greater value than the amount deposited.
The trial judge is accorded a wide discretion in accepting or rejecting the opinions of experts in establishing market value and only when this finding is manifestly erroneous should it be disturbed on appeal.
In his written reasons for judgment the trial judge declared he was impressed with the credentials of defendant’s appraisers, whom he felt were extremely well qualified by education and experience and had *548 followed accepted appraisal principles in arriving at their conclusions on the land value.
We find no manifest error in the acceptance of the trial judge of the opinions "of these experts in preference to the appraisals offered by the State.
Mr. Williams is a college graduate who was employed for twelve years by Connecticut General Life Insurance Company in Greenville, Mississippi, as a farm mortgage appraiser; thus, he appraised primarily deltaic farm lands similar to the property here involved.
While so employed he attended appraisal courses at the University of Illinois and the University of Iowa. He is presently engaged in the real estate business at Lake Providence, Louisiana, in neighboring East Carroll Parish, and testified as to his familiarity with property in Madison Parish. As a member of the firm of Alleuvial Soils, Inc., he has participated in the purchase and sale of lands in Madison Parish.
Mr. Sevier, the other appraiser for defendant, has resided in Madison Parish all of his life. He is a law school graduate who farms and engages in the real estate business in Tallulah.
One of the factors considered by both Williams and Sevier in their appraisal that was given no particular significance by the appraisers for the State, was the allotment assigned to defendant’s farm by the Agricultural Stabilization Committee for growing cotton. It was shown that defendant has an above average number of acres allotted for the growing of cotton and that this land is capable of producing a high yield. Williams and Sevier were of the opinion the market value is enhanced considerably by this factor. Carter and Goch-enour could not say to what extent a cotton acreage allotment affected the land value. The State argues that this factor is immaterial as no cotton acreage as such was expropriated.
We cannot agree with this argument. All factors relating to the productivity of the land affect its market value. All appraisers agree that the best and highest use of this tract of land is for the growing of cotton and soybeans. Any limitation on the production of either crop logically must be given special consideration in arriving at market value.
The evidence reflects that Williams and Sevier considered a number of sales of farm properties in Madison Parish and in neighboring West Carroll Parish in arriving at their conclusions. Some of these sales were of close proximity in time to the expropriation and situated near subject property, although not comparable in size to the tract here involved. Particularly pertinent was the sale from defendant to J. H. McPherson, Sr. of 409 acres adjoining the subject property for $450.00 per acre just six months prior to this expropriation.
All witnesses recognized there has been a general increase in farm property values in this area for the past five years or more, and all sales considered as comparable must be adjusted to allow for this increase in value. Defendant paid $325.00 per acre for a portion of his tract two years prior to this proceeding. The evidence reflects he spent a considerable sum in clearing the land for cultivation and installing drainage and field roads, all of which enhanced the value of the property.
After perusing the record, we find the evidence sufficient to justify the trial judge’s acceptance of the testimony of defendant’s appraisers establishing the market value of the property taken as higher than that claimed by the State.
We are of the opinion, however, that the defendant is bound by the testimony of his own witness, Williams, and the trial court should not have awarded more than $455-00 per acre, the value estimated by this witness.
We do not find it necessary to pass on the correctness of the trial judge’s finding *549 of severance damages because of our views concerning the value of special benefits which will exceed the amount of severance damages awarded by the lower court. We shall also pretermit any discussion of special benefits relating to enhanced values of defendant’s property at three quadrants of the interchange as the amount of benefit realized from the sale of dirt for highway construction is greater than the severance damages awarded. It was stipulated by the parties that defendant had contracted with the T. L. James Company, the prime contractor for the construction of the highway, to allow the removal of dirt from 14 acres of land on the north and 34.5 acres on the south of the proposed highway, for a total sum to defendant of $60,000.00.
Defendant contends that no part of the $60,000.00 to be realized by defendant from the sale of dirt from 48.5 acres of the land should be offset against severance damages. The trial court agreed with this argument and rejected the plaintiff’s contention that this amount should be offset against any severance damages.
The court distinguished the cases relied on by the plaintiff, State of Louisiana, Through Department of Highways v. Williams, 210 So.2d 616 (La.App.2d Cir. 1968), and State of Louisiana, Through Department of Highways v. Anding, 189 So.2d 445 (La.App.3d Cir. 1966), by finding that defendant had sold something of value and had not received a “windfall” as discussed in the Anding case.
We believe the use of the term “windfall” is somewhat misleading and unnecessary in a resolution of whether an amount received by a landowner is a special benefit caused by the construction of the public improvement. Fundamentally, the benefit must be one that is special to him rather than a general benefit to all property in the area of the improvement.
The road contractor buys the dirt necessary for constructing the required grade of the highway from abutting property owners, if possible, in order to save hauling costs. It is logical that the contractor will pay more for dirt that does not have to be hauled and lies adjacent to the construction site. In the case at bar the defendant sold dirt from 48.5 acres for over $1,200.00 per acre average. The maximum value of the land as contended by defendant was $500.00 per acre. By the sale of the dirt from this acreage he has realized a sum which doubles his own estimate of market value. We consider this to be a special benefit, and the amount received over the estimated market value should be credited against any severance damages awarded. This is in accord with the previous holding of this court in the Williams case, supra.
Since we have concluded that the market value of defendant’s land is $455.00 per acre, then the total value of the 48.5 acres from which dirt is to be removed is $22,-067.50. This sum subtracted ■ from $60,000.-00 (the amount received for the dirt) leaves a net special benefit of $37,932.50. The total award for severance damages by trial court was the sum of $29,859.45. Therefore, since the special benefit exceeds the severance damages found by the trial court, no award should have been made.
Defendant contends the trial court erred in not awarding the cost of construction of a bridge to give all weather access to a large portion of the south remainder. A large drainage ditch severs about 100 acres of this tract from the only point of access to a road from the tract. The trial court found that the $200.00 per acre damages allowed to the south 111.74 acres included all costs to make the acreage usable for limited agricultural purposes. The inclusion of these items in the estimated loss of market value is more proper than making a special award on a cost to cure basis, an appraisal method which the Supreme Court has ruled improper absent unusual circumstances. State of Louisiana, Through Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969).
*550 For the reasons assigned the second paragraph of the judgment appealed from is amended to read:
It is ordered, adjudged and decreed that there be judgment herein in favor of defendant, James B. McPherson, Jr., and against plaintiff, State of Louisiana, through the Department of Highways, in the full sum of $52,638.95, subject to a credit of $47,485.00 previously paid to defendant, together with interest at 5% per annum from the date of June 21, 1968, until paid, together with all costs.
Otherwise, the judgment appealed from is affirmed at appellant’s cost.