260 So.2d 106 (1972)
PARISH OF EAST BATON ROUGE
v.
Elmira Harelson HARRISON et al.
No. 8752.
Court of Appeal of Louisiana, First Circuit.
March 13, 1972.
Rehearing Denied April 17, 1972.
Writ Refused May 25, 1972.
Charles E. Pilcher, Asst. Parish Atty., Joseph F. Keogh, Parish Atty., Baton Rouge, for appellant.
*107 Victor A. Sachse, Breazeale, Sachse & Wilson, Baton Rouge, for appellees.
Before BLANCHE, TUCKER and COLE, JJ.
COLE, Judge.
The plaintiff in this expropriation proceeding, the Parish of East Baton Rouge (Parish), is appealing the judgment of the trial court which awarded a total of $96,000.00 as just compensation for the land and buildings taken, and for severance damages to the remainder. The sum awarded was decreed to be subject to a credit of $80,100.00 previously paid with the balance of $15,900.00 to bear legal interest at five percent (5%) per annum from October 27, 1969 (the date defendants stipulated to vest title in plaintiff) until July 29, 1970 (the effective date of Act 315 of 1970 amending Civil Code Article 1938), and thereafter at the rate of seven percent (7%) per annum, until paid. The Parish contends the trial court erred in finding that the testimony of one expert best established the fair market value of the land and improvements taken. Further, the Parish asserts that the trial court erred in refusing to allow the alleged special benefits to the remaining property which accrued as a result of the street improvements to offset severance damages. For reasons hereinafter set forth, we affirm in part and reverse in part.
Owned by Elmira Harelson Harrison, Holt B. Harrison, and Elmira Ann Harrison Parnell (Defendants), the property in question is located on the northeast corner of the intersection of North Foster Drive, a major north-south thoroughfare in the Parish of East Baton Rouge, and Choctaw Road, which runs east and west and is also a major traffic artery. Before the taking, the Defendants' corner lot consisted of 27,647.18 square feet with a side line of 199.77 feet along North Foster Drive running north from the corner and frontage of 138 feet on Choctaw Road running east from the corner on the southern boundary of the lot. The street improvements made by the Parish necessitated the expropriation of a somewhat wedge-shaped piece of property from along the entire western boundary of Defendants' property. The southern edge of the wedge was the widest and took 48.82 feet front on Choctaw Road. The northern boundary of the part taken measured a narrow 15.51 feet deep from the original right of way on North Foster Drive and the eastern boundary consisted of a long arc since the property was expropriated for the purpose of constructing a turn out lane. The land taken consisted of 4,929.30 square feet leaving a remainder of 22,717.88 square feet. Defendants' frontage along Choctaw Road was reduced from 138 feet to 95.18 feet.
The property is zoned M-1 for light industrial usage. Up until the time of the taking, the Defendants maintained a business known as the Harrison Paint Company on the site. Several connected buildings of various sizes and ages were used by Defendants in this operation. While only part of these structures were located within the area taken, the Parish acknowledged that the Defendants should be paid for all the buildings on the property, the nature of the taking having rendered useless those remaining.
The Parish filed the expropriation petition on March 19, 1969. There was no objection to the taking itself and, pursuant to the joint stipulation of October 27, 1969, in which the parties reserved the right to adjudicate at a later date just compensation for the expropriation, an interim judgment was rendered on October 28, 1969, granting the Parish full ownership of the property. On the same day the Parish deposited in the registry of the court $80,100.00 alleged to represent a fair value for the property expropriated. Furthermore, the interim judgment decreed that the Parish be given credit for the sum deposited in the event the subsequent adjudication found just compensation as of *108 October 28, 1969, to be in excess of that amount.
The trial on the merits was held on March 18, 1971. Noting that the issue to be decided was the fair market value of the property on the date of the taking, October 28, 1969, the trial court made specific findings in three areas: the value of the land actually taken, the value of the improvements on Defendants' property, and the severance damages suffered by the remainder of the property. After considering the testimony of appraisers and construction consultants on behalf of the Parish and the Defendants, the trial court concluded that the determinations in the three areas made by Mr. Julius A. Bahlinger, a real estate appraiser for the Defendants, were closest to the applicable fair market values.
With respect to the value of the land actually taken, the trial court found that the proper method to be used in making this determination involved a square foot valuation. Relying upon Bahlinger's estimation of $2.70 per square foot, the lower court concluded that the value of the 4,929.3 square feet taken was $13,309.00. Mr. Darrel V. Willet and Mr. Carl Snyder, real estate appraisers for the Parish, used comparable sales in the area to obtain a front foot value of $400.00 for the entire property which converted to a value of $2.00 per square foot for the property taken. In contrast, Mr. Kermit Williams, another real estate appraiser of the Defendants, gave the property taken a value of $2.90 per square foot.
All appraisers agreed that the taking rendered useless the entire improvements on the Defendants' original parcel. Comparisons of the estimates given by the various expert witnesses are difficult because the improvements were grouped in different ways when each made their valuations and items included in the totals of some witnesses were omitted altogether by others. Construction consultants for both parties made estimations as to the cost of replacing the structures on Defendants' property. After considering all the evidence adduced on behalf of both parties, which included calculations for depreciation of the improvements, the trial court found that the estimate by Bahlinger of a total depreciated value for all the improvements, $75,978.00, to be the most reasonable one made. Therefore, the total improvements were held to have a value of $75,978.00.
Severance damages were found by the trial court in the amount of $6,801.00. Since the property in question is located at the intersection of two major thoroughfares, the trial court concluded that it would have made an excellent location for a service station. Relying upon testimony to the effect that the major oil companies will rarely consider sites with less than 150 feet frontage, the trial court reached the conclusion that the property had been damaged as a potential service station location. However, the court erroneously stated that, after the taking, Defendants were left with 138 feet front on Choctaw Road. As noted above, the Defendants' original frontage on Choctaw was only 138 feet which was reduced by the taking to 95.18 feet. Relying on Mr. Bahlinger's assessments that the property had been damaged by the taking to the extent of $.25 per square foot, the trial court found the value of the remaining 22,717.88 square feet had been reduced from $2.70 to $2.45 per square foot producing the $6,801.00 in severance damages. Mr. Williams, the other real estate appraiser for Defendants, considered that the taking had reduced the value of the remainder from $2.90 to $2.60 per square foot and he computed severance damages to be $6,815.00. On the other hand, the real estate appraisers on behalf of the Parish, Mr. Willet and Mr. Snyder, concluded that the improved thoroughfare resulting from the taking with the frontage thereon had increased the value of the remaining tract to $2.50 *109 per square foot. They had considered $2.00 per square foot to be the prior value of the property.
In summary, the trial court held that the property actually taken had a value of $13,309.00, that the improvements on the premises were worth $75,978.00, and that severance damages amounted to $6,801.00. The court rounded off the sum of those figures and fixed total just compensation at $96,000.00. Judgment was rendered in favor of Defendants accordingly. In addition, fees for expert witnesses of Defendants were fixed as costs and all costs were taxed against the Parish to the extent permitted by law.
As aforesaid, the Parish asserts that the trial court erred in relying solely on the conclusions reached by Mr. Bahlinger, who testified on behalf of the Defendants, in preference to the valuations offered by other experts who testified. That the trial judge relied on the opinion of an expert witness for the Defendants to the exclusion of those for the Parish is not of itself erroneous. State Dept. of Hwys. v. McPherson, La.App., 241 So.2d 543. In expropriation suits, it is within the discretion of the trial court to determine the weight to be given the testimony of witnesses and the factual findings of the trial court on questions of valuation of the property, severance damages and the weight given expert testimony should not be disturbed on review in the absence of manifest error. State Dept. of Hwys. v. William T. Burton Industries, Inc., La.App., 219 So.2d 837; State Dept. of Hwys. v. Chesson, La.App., 229 So.2d 763; State Dept. of Hwys. v. Salassi, La.App., 244 So.2d 871. In light of all the evidence and testimony, we cannot say that the trial court abused its discretion and committed manifest error in arriving at the findings which were made for the value of the property taken and for the value of the improvements on the property. Those awards will not be disturbed by this court.
However, we do find that the trial court was in error as regards the issue of severance damages. In the reasons given for judgment, the trial court incorrectly stated that the Defendants were left with 138 feet of frontage on Choctaw, and further noted: "Most large oil companies will not consider any lot with less frontage than 150 feet so this property insofar as service station usage is concerned has been restricted considerably." In fact, the Defendants had only 138 feet of frontage on Choctaw before the taking which presumably would have made the property undesirable as a site for a service station even before the taking. In addition, this Court notes that whereas before the taking there was no actual access to the property from North Foster Drive due to the close proximity of a building along the right of way line, after the taking the newly unimproved remainder was afforded approximately 200 feet of frontage oriented for the first time to the west and along North Foster Drive. If one is to consider the remainder as a potential service station site it now, for the first time, does have sufficient frontage. The record reflects that with the transition of North Foster Drive from a two lane asphalt street with ditches on both sides to a four lane concrete thoroughfare extending all the way to the Airline Highway, it is now equal to or superior to Choctaw Road in traffic count which justifies the additional westward frontage orientation for service station usage. In essence, this corner site has been converted from one oriented only in one direction to one, in a strict utilitarian sense, oriented in two directions either of which is equally desirable for many purposes in addition to that of a service station.
An important factor in considering whether there are severance damages is the highest and best use of the property. Just because frontage is reduced does not necessarily mean that the remainder has been damaged. Here, the 95.18 feet frontage remaining on Choctaw *110 Road should be considered independently of the original whole in determining if its value increased, decreased, or remained the same as a commercially acceptable site. Mr. Bahlinger testified, page 171 of the transcript:
"The property as it was presently being used I thought would fit the highest and best use concept because the Harrison Paint Company was a retail business and the location on Choctaw Drive in that particular location, it was well located for both retail sales which they sold and decorator sales, and to commercial printers (sic) which they also served. So I would have to consider that the present use of the property under the consideration of market value would have been among the highest and best use considerations."
Accepting the above uncontradicted version of the highest and best use of the location, we fail to see how the reduced frontage has adversely affected value. The landowner has the burden of proving that severance damages were sustained and, in this instance, has failed to bear that burden. On the other hand, the condemning authority has the burden of proving that the remainder received special benefits available as an offset against severance damages otherwise allowable to the landowner. State Dept. of Hwys. v. William T. Burton Industries, Inc., supra. Assuming that there were, indeed, severance damages in this instance, the record reflects that the plaintiff has borne the burden of proving offsetting special benefits.
In contrast to the testimony of Mr. Bahlinger and Mr. Williams, real estate appraisers for the Defendants, who found severance damages in the amounts of $6,801.00 and $6,815.00, respectively, the real estate appraisers on behalf of the Parish were both in agreement that the improvements to the street which necessitated the taking enhanced the value of the remaining land owned by the Defendants with the result that Defendants were entitled to no severance damages. The Supreme Court has summarized the general rules relating to severance damages and increments in value to property as a result of expropriations in Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654.
"When part of a tract of land is taken for the public use, it frequently happens that the construction and maintenance of the public work for which the land is taken inflicts some injury upon the remainder of the tract or parcel. And, while this is true, yet in other respects the remaining land may be benefited by the construction of the work. The benefits or advantages, if any, which may result from the construction of the work are either general or special. General benefits are those which are shared alike by all property owners in the neighborhood or community. Such damage as a property owner may sustain as a result of the construction and use of a public work cannot be offset by these general benefits."
However, if the remaining tract becomes more valuable because of its frontage on the widened or improved street, this enhancement of value due to its location is a special benefit which may be offset against any severance damage which would otherwise be due the landowner. State Dept. of Hwys, v. Central Realty Investment Co., 238 La. 965, 117 So.2d 261; State Dept. of Hwys. v. William T. Burton Industries Inc., supra. This increment in value is a special benefit even if all the property with frontage along the improved street increases in value. William T. Burton Industries, supra. Relying on the testimony of the appraisers for the Parish, this Court finds that the location of this property at an intersection of two improved four-lane thoroughfares, both of which are major traffic arteries, served to enhance the value of Defendants' remaining property. Mr. Bahlinger did not entirely disagree considering that he said, "The improvements to Foster Drive would help this property, it's true, but I think *111 it would help every property along Foster Drive to some degree." (Transcript, page 174.) Such enhancement is a special benefit under the law which offsets and wipes out any severance damage which may have been due Defendants otherwise. Therefore, the award for severance damage is reversed.
Not raised by the plaintiff as an issue on appeal but noticed by this Court is the award of legal interest from July 29, 1970, at the rate of seven percent (7%) per annum on the additional sum decreed by the trial court. The interest rate as provided by Louisiana Civil Code Article 1938 was 5% when the debt accrued, to-wit, on October 28, 1969. Legal interest is a matter of substantive law and a change therein should not be given retroactive effect unless the legislature so provides. Legal interest on this judgment is 5% per annum from the aforesaid date of October 28, 1969, until paid. Williams v. Petroleum Helicopters, Inc., 234 So.2d 522 (La.App. 3rd Cir. 1970), writ refused; Ducote v. Life Insurance Company of Louisiana, 245 So.2d 531 (La.App. 3rd Cir. 1971); State Dept. of Hwys v. Vermilion Development Company, Inc., 258 La. 1159, 249 So.2d 167; Diaz v. Breaux, 252 So.2d 697 (La.App. 1st Cir. 1971); Womack et al. v. Travelers Insurance Company et al., 258 So.2d 562, (La.App. 1st Cir., 1972).
It should be noted that Defendants in their brief contended that the trial court erred in relying on the testimony of Bahlinger in arriving at the value of the improvements on Defendants' property. They urge that an excessive amount of depreciation was used which resulted in inadequate compensation to the Defendants for the improvements. Defendants did not answer the Parish's appeal nor did they appeal the trial court's judgment themselves. Asserting an error or requesting a change in an appellate brief is not sufficient. Judgment may not be amended in favor of a party who did not appeal or answer his opponent's appeal. LSA-C.C.P. Art. 2133; Krizan v. Storz Broadcasting Co., La.App., 145 So.2d 636.
The judgment of the trial court is affirmed in all respects except that the award of $6,801.00 for severance damages is reversed and set aside; and, except that interest is decreed at the rate of five per cent (5%) per annum, from October 28, 1969, until paid. All costs of these proceedings, both in the trial court and this court, are assessed to plaintiff, Sterkx v. Gravity Drainage District No. 1 of Rapides Parish, 214 So.2d 552, 556, 557 (La.App.3rd Cir. 1968), writ refused, 252 La. 964, 215 So.2d 130.
Amended and as amended affirmed and rendered.