SAVOY, Judge.
This expropriation suit was filed by plaintiff. The district judge awarded a total of Forty-Two Thousand One Hundred Forty-Four and No/100 ($42,144.00) Dollars to defendants. Plaintiff appealed. .
Texaco and Vincent have not appealed the judgment of the district court nor have they answered the appeal. Therefore, the judgment as to them is final.
■The State of Louisiana, through the Department of Highways, filed suit under LSA-R.S. 48:441 et seq. to expropriate a portion of land owned by the defendant, Mack H. Vincent. The land was located on Ryan Street and College Street in the City of Lake Charles, and had full access from all lanes of traffic from both streets. The property expropriated 4,110.2 square feet, was in connection with State Route Louisiana 1-210 by-pass.
At the time of the taking, a portion of the property was subject to a lease to Texaco, Inc., which operated it as a service station site. The remaining portion of the property contained a one-story frame building which was being used as a barber shop.
Injts original petition, the State alleged that the value of the land and improvements taken was $20,099.00 and alleged severance damages to be in the amount of $28,649.00. The State filed a Supplemental and Amending Petition in which it alleged that the total amount of just compensation to which the defendants were entitled was in the amount of $26,900.00, $13,687.00 being the value of the land taken and $13,213.00 being the amount of severance damages. A Second Supplemental and Amending Petition was filed by the State alleging the value of the land taken was $15,100.00 and that there were no severance damages attributable or accruing tó the remainder of the property as a result of the expropriation.
Defendant, Mack H. Vincent, answered the suit, alleging the value of the property taken to be $80,000.00 and severance damages to the remainder was $80,000.00. Texaco, in its original answer, claimed $24,871.71 for loss of its right and interest in the property, severance damages of $17,200.00, cost of relocation of $1,500.00, plus costs of court, attorneys’ fees, and appraisers fees in the sum of $5,000.00. Texaco, in an amended answer, alleged $34,600.00 for loss of right and interest in the property and reducing its severance damages to $7,550.00, plus costs of reloca *92 tion in the amount of $1,500.00, plus legal interest from the date of the taking, and for all costs and expenses, including costs of court, attorneys' fees and fees of appraisers in the amount of $5,000.00.
The case was tried on its merits and the trial judge assigned written reasons for his judgment. He concluded that Mack H. Vincent should receive a total of $30,794.-00, $17,000.00 for the property taken and $13,794.00 as severance damages. He further concluded Texaco was entitled to a total of $24,978.00, $1,200.00 for improvements taken, $10,150.00 for improvement damages and $13,628.00 for its leasehold interest. Mack Vincent was to pay Texaco $13,628.00 for its leasehold interest from the total amount awarded to him. Also, because the State had originally deposited $48,748.00 in the registry of the court, which amount was withdrawn by defendants, defendants were ordered to return $6,604.00 to the State with legal interest from the date of withdrawal until paid. Additionally, expert witness fees were taxed as costs. Their fees were fixed in the amount of $2,450.00.
Plaintiffs appeal this judgment alleging the trial court erred in two particulars. One, in awarding severance damages because the remainder of Mack H. Vincent’s land gained “special benefits” as a result of the taking which benefits offset any severance damages. The second error of the trial judge alleged by the plaintiff was the taxing of costs, including the expert witness fees, to plaintiff.
In oral argument counsel for plaintiff has abandoned his second specification of error. Therefore, the only matter for determination is that of severance damages.
Mr. Normand Terry and Leonard Pauley were the expert witnesses for Mack H. Vincent and Texaco, respectively. Terry, using the square foot approach, appraised the property taken at $18,537.00. He found severance damages in the amount of $13,794.00. He stated the highest and best use for the property would be a service station; that the location of the property gave it a high.value because of its accessibility ; that after the taking there was limited access to the property. He concluded severance damages would result because of its limited access, reduction of access to traffic on both streets and the changing of the highest and best use of the property as a service station. He testified that no special benefit was given to the remaining property. In Terry’s opinion, the fact Vincent sold the remaining property at a premium price to Humble Oil was because of a plottage situation, i. e., the property was the key needed by Humble Oil in a land acquisition. Terry felt the whole area along Ryan Street generally benefited by 1-210. Pauley’s testimony was concerned with the value of Texaco’s leasehold. He was of the opinion that Texaco’s interest in the lease was $25,900.00, the improvements at $1,200.00 and severance damages at $7,650.00. He, too, stated the taking of Vincent’s property reduced the accessibility to the remaining property from both streets. Also, he opinioned the property had no value for use as a service station after the taking. No special benefits to the remaining property of Vincent was found by Pauley.
William D. Coleman was the expert witness for plaintiff. He valued the property taken at $15,100.00. Coleman was of the opinion no severance damages resulted to the remaining property because of special benefits derived by the construction of I-210. The reason for his finding a special benefit was the fact that the remainder property of Vincent was sold for substantially more than the value he had placed on the property prior to the taking.
Grimes, de la Houssaye and Henry, witnesses for Texaco, testified that the remainder property of Vincent would not be suitable for the location of a service station. In addition, de la Houssaye, real estate agent for Texaco, testified the price Vincent got for the remainder property was because of the plottage situation.
*93 No issue was raised on this appeal concerning the values of the land taken found by the trial judge, only his award of severance damages. In his written reasons, he stated:
The more serious dispute among the two appraisers concerns the damages, if any, to the remainder of the property. It has been argued that Mr. Vincent is not entitled to any severance damages because of the special benefits enjoyed by this property as a result of the taking. Mr. Terry found no special benefits whereas Mr. Coleman did find special benefits.
The evidence clearly establishes that access to the property after the taking and completion of the project will be severely limited, in that westbound traffic on College Street and southbound traffic on Ryan Street will be denied direct access to the property.
Mr. Terry found that the remainder of the property was damaged because of the limited access, reduction in size and the change from its highest and best use to the characteristics of an interior lot.
Mr. Coleman found that there were special benefits to the property which more than offset any severance damages. The remainder was sold for $60,000.00 and he concluded this high price was paid directly as a result of 1-210 Highway. He testified that he could not find any general benefits along Ryan Street and all of the benefits were to the corner as special benefits.
Mr. Terry found that property all along Prien Lake Road and College Street were affected by 1-210. He found no benefits peculiar to the subject property.
Thus the question presented is whether the remainder of the property suffered any damages and, if so, were these damages offset by any special benefits.
The evidence reflects that the remainder of the subject property was sold on May 6, 1971, for $60,000.00. The evidence further established that this remainder along with the adjoining lot on Ryan Street and the two adjoining lots on College Street were also sold at the approximate same time and then all of these parcels were subsequently sold to Humble Oil & Refining Company for a higher price on July 7, 1971.
Mr. Pauley found that the remainder of the property could not be used economically, although he conceded it could be used as a small type commercial establishment. He found no special benefits to the remainder of the property. He found a great increase in value of adjoining property but not to the Vincent property.
Mr. Coleman found no severance damages in that the property sold for more than enough to cover damages. Mr. Terry found that the remaining property had some commercial value and that it could be used economically, although its highest and best use had been destroyed by the taking.
The Court concludes that the remainder of the property in question received no special benefits. On the contrary, the remainder was damaged due to its loss of access, reduction in size and loss of its highest and best use. The Court further concludes that the reason for the premium price which the remainder brought, was the fact that it was needed in this special situation to complete the plottage to Humble Oil Company.
Plaintiff contends, that because of special benefits resulting to the remainder of the property, no severance damages were caused by the taking. State Department of Highways v. William T. Burton Industries, Inc., 219 So.2d 837 (La.App. 3 Cir. 1969) and cases cited therein set forth the controlling principles and rationale dispositive of the issue before us. We conclude defendants have carried their burden of proving severance damages. The evidence in this case convinces us that plaintiff has
*94 failed to prove that the remaining property received special benefits. The particular relationship of the land remaining to 1-210 did not create a special benefit as the record indicates it could not be used as a service station, .the highest and best use of the property according to all experts, because it was too small. We find no error in the trial judge accepting the testimony that the premium price paid for the remaining property was due to a plottage question. The testimony accepted by the trial judge also reveals the accessibility to the remaining property was greatly reduced. Finding no manifest error in the trial judge’s determination that no special benefits accrued to the remaining property, we affirm the judgment of the district court.
For the reasons assigned, the judgment of the district court is affirmed at appellant’s costs.
Affirmed.